635 A.2d 1077

**Karen Lynne BAINES, Appellant,**

v.

**Bobby Joe WILLIAMS.**

Superior Court of Pennsylvania.

Argued Sept. 14, 1993.

Filed Dec. 20, 1993.

74

Joseph S. Britton, Langhorne, for appellant.

Before WIEAND, TAMILIA and HESTER, JJ.

TAMILIA, Judge:

This is an appeal from the Order of the Court of Common Pleas of Bucks County of March 4, 1993 remanding the custody matter of appellant, Karen Lynne Baines, to the Circuit Court of Morgan County, Alabama, for further proceedings. The underlying custody complaint filed by appellant sought primary physical custody of the parties' three minor children, Bobby Williams, 6, Billy Williams, 5, and Amie Baines, 3.[1] Hearing in the matter was held on February 23, 1993 before the Honorable John J. Rufe. Appellee, Bobby Joe Williams, was not present at the hearing. Thereafter, the trial court declined to exercise jurisdiction and entered the above Order.

A recital of the factual and procedural history of this case appearing of record is necessary to resolution of the issues. Appellant is a native of Pennsylvania and lived in Bucks

1. Appellant's other child, Justin Rylak, is not a subject of this matter.

County continuously from the time of her birth in 1956 until June, 1984. The parties met in Texas in 1984, and in the summer of 1986 moved to Birmingham, Alabama. Bobby Williams was born in Texas, and Billy Williams and Amie Baines were born in Alabama. From the time of the birth of the children, appellant was their primary caretaker. During the last two years of the parties' relationship, appellee was unemployed and had little involvement in the care of the children. On August 30, 1992, appellant informed appellee that she wanted to separate and that she was returning to Pennsylvania with the children. Appellee then grabbed appellant by the hair and, in front of the children, put her head through a wall. Appellee put the children in his truck and when appellant attempted to talk him out of his action, he grabbed her by her ponytail and dragged her around the driveway. As he drove away, appellee told appellant she would never see the children again. Subsequently, appellant left Alabama, returning to Pennsylvania on September 6, 1992. Prior to leaving Alabama, appellant filed a complaint in divorce on September 2, 1992, alleging a common law marriage existed between the parties.

Between September 6, 1992 and November 11, 1992, the parties spoke to each other one time on the telephone, but appellee would not allow appellant to speak to her children. On November 11, 1992, appellant received a telephone call from appellee's sister, Sharon Chambers. Ms. Chambers informed appellant that the children had been with her most of the time since August 30, 1992, and that appellee had recently deposited them with her, informing her that he would return in two or three weeks. Ms. Chambers did not know appellee's whereabouts or the date of his return, and she asked appellant if she would come to Alabama to retrieve the children. Appellant immediately drove to Alabama with her parents and picked up the children. At that time, the children were wearing dirty clothes with holes in them, and Billy was not wearing any underwear. All of the children had head lice, and they had no other clothing. Appellant also discovered that the oldest child, Bobby, was not attending school on a regular basis.

Appellant filed a complaint for custody in Bucks County on December 9, 1992. On January 19, 1993, appellee filed a motion to dismiss for lack of jurisdiction. In his motion to dismiss, appellee alleged appellant left Alabama in direct violation of a court Order entered by the Honorable C. Bennett McRae of the Circuit Court of Morgan County, Alabama, on September 8, 1992, a copy of which appellee appended to his motion. The Order, which apparently resulted from a motion by appellee for immediate temporary custody, prohibited either party from removing the children from the state of Alabama without the express written authority of the court. Appellee's petition to dismiss also had appended to it a summons by the sheriff indicating that appellant had been personally served with a copy of the court Order on September 11, 1992. On February 22, 1993, appellee's Alabama counsel faxed the Court of Common Pleas a copy of another purported Order from the Circuit Court of Morgan County. This Order, entered February 1, 1993, set a contempt hearing date for February 22, 1993 in Alabama for appellant, and awarded temporary custody of the children to appellee.

On the basis of the foregoing, the Court of Common Pleas stated:

The Uniform Child Custody Jurisdiction Act specifically prohibits this Court from assuming jurisdiction under these circumstances. The Act states:

A court of this Commonwealth shall not exercise its jurisdiction under this subchapter if, at the time of filing the petition, a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this subchapter, unless the proceeding is stayed by the court of the other state because this Commonwealth is a more appropriate forum or for other reasons. 23 Pa.C.S.A. Section 5447 [sic].

(Slip Op., Rufe, J., 3/4/93, p. 3.)

■ We agree with the trial court that this case is governed by the Uniform Child Custody Jurisdiction Act ("UCCJA"),

which has been codified in Pennsylvania at 23 Pa.C.S. §§ 5341 *et seq.*[2] When reviewing a trial court's decision not to exercise jurisdiction under the terms of the UCCJA, we will not reverse the trial court's decision unless we find an abuse of discretion. *Merman v. Merman,* 412 Pa.Super. 247, 603 A.2d 201 (1992). Upon our review of the abbreviated record, we find that the trial court did not possess sufficient evidence to decline jurisdiction, and we remand for further proceedings to determine where proper jurisdiction exists.

■ As stated in the UCCJA, the general purposes of the Act are to:

(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being.

(2) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child.

(3) Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training and personal relationships is most readily available, and that courts of this Commonwealth decline the exercise of jurisdiction when the child and his family have a closer connection with another state.

(4) Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child.

(5) Deter abductions and other unilateral removals of children undertaken to obtain custody awards.

(6) Avoid relitigation of custody decisions of other states in this Commonwealth insofar as feasible.

2. The UCCJA has been adopted in Alabama. Alabama Code 1975, §§ 30-3-20 to 30-3-44. Nevertheless, the UCCJA is not a "reciprocal" law and is in full operation in each state regardless of its enactment in other states. *Hattoum v. Hattoum,* 295 Pa.Super. 169, 441 A.2d 403 (1982).

(7) Facilitate the enforcement of custody decrees of other states.

(8) Promote and expand the exchange of information and other forms of mutual assistance between the courts of this Commonwealth and those of other states concerned with the same child.

23 Pa.C.S. § 5342(a). The UCCJA reflects the accepted view in all child custody determinations that the paramount concern is the best interests of the child. *Ashford v. Ashford,* 395 Pa.Super. 125, 576 A.2d 1076 (1990).

Jurisdiction of custody matters is conferred upon competent courts of the Commonwealth under the UCCJA if:

(1) this Commonwealth:

(i) is the home state of the child at the time of commencement of the proceeding;  or

(ii) had been the home state of the child within six months before commencement of the proceeding and the child is absent from this Commonwealth because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this Commonwealth;

(2) it is in the best interest of the child that a court of this Commonwealth assume jurisdiction because:

(i) the child and his parents, or the child and at least one contestant, have a significant connection with this Commonwealth;  and

(ii) there is available in this Commonwealth substantial evidence concerning the present or future care, protection, training and personal relationships of the child;

(3) the child is physically present in this Commonwealth, and:

(i) the child has been abandoned;  or

(ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent;

(4)(i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (1), (2) or (3), or another state has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum to determine the custody of the child; and

(ii) it is in the best interest of the child that the court assume jurisdiction; or

(5) the child welfare agencies of the counties wherein the contestants for the child live, have made an investigation of the home of the person to whom custody is awarded and have found it to be satisfactory for the welfare of the child.

23 Pa.C.S. § 5344(a). Under section 5344, then, jurisdiction under the UCCJA may be based on home state jurisdiction, "significant contacts" or parens patriae jurisdiction. *Simpkins v. Disney,* 416 Pa.Super. 243, 610 A.2d 1062 (1992).

Home state, for purposes of the UCCJA, is defined as "the state in which the child immediately preceding the time involved lived with his parents, a parent or a person acting as a parent, or in an institution, for at least six (6) consecutive months ..." 23 Pa.C.S.A. § 5343. The UCCJA definition of home state is used solely to determine whether a specific state can assert jurisdiction under the theory that it is the home state.

*Merman, supra* 412 Pa.Super. at 252, 603 A.2d at 203–204.

The determination of a child's home state, however, does not automatically confer jurisdiction upon that state. *Boudwin v. Boudwin,* 419 Pa.Super. 570, 615 A.2d 786 (1992). In *Tettis v. Boyum,* 317 Pa.Super. 8, 463 A.2d 1056 (1983), this Court affirmed the decision of the trial court in finding the children's "substantial contacts" with mother's home in Pennsylvania were more compelling in determining jurisdiction than a home state inquiry even though the children had lived for several years in Texas with father immediately prior to the proceedings. Further, jurisdiction only exists if it is in the child's best interest, not merely the interest of convenience of the parties. *Aldridge v. Aldridge,* 326 Pa.Super. 49, 473 A.2d

602 (1984). The interest of the child is served by the forum with optimum access to relevant evidence about the child and family. *Id.*

■ In this case, were our analysis limited solely to a determination of the children's home state, we would be constrained to find jurisdiction exists in Alabama. Under either a "significant contacts" or parens patriae analysis, however, the evidence, though somewhat meager, indicates Pennsylvania properly may be conferred with jurisdiction.

Appellant testified at the February 23, 1993 hearing that she was born and reared in Bucks County and that she has extensive numbers of family members living there, including her parents, two brothers, and various aunts, uncles and cousins. She further testified that she and her children are currently residing with her divorced brother and his two children, ages 7 and 11, in a six-bedroom, two-bathroom house in Levittown, Bucks County. As part of her living arrangement with her brother, appellant takes care of the house and the children while her brother works. Appellant's son Bobby attends school in Bucks County and is doing well. Appellant further testified that all the children are thriving in Bucks County, are clean, well-fed, properly clothed, have many young relatives and neighborhood friends with whom to play, and have no desire to return to Alabama. Appellant also testified to her intention to remain in Bucks County.

■ By contrast, appellant testified to the conditions of the children's environment in Alabama, which was the antithesis of that found in Pennsylvania. Although appellee did not testify at the hearing, and appellant presented no testimony other than her own, such testimony nevertheless constitutes the record before us and, with regard to the children's best interests is disconcerting, to say the least. Interestingly, at the conclusion of the hearing, the trial court stated: "I will review the Uniform Child Custody Jurisdiction Act and in accordance with that act correspond or otherwise communicate with Judge McRae in Alabama before I make a decision." (N.T., 2/23/92, p. 44.) Our examination of the record, however,

discloses no such communication, and the trial court does not indicate in its Opinion and Order that it had any contact with the court in Alabama. This, despite the fact that appellant had filed a complaint in divorce in Alabama, and that appellee's motion to dismiss indicated that he had filed a motion for immediate temporary custody in Alabama, all of which the trial court was aware.

The UCCJA provides for a situation such as this as follows:

> **(c) Stay; communication with other court.**—If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction, it shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with section 5360 (relating to hearings and studies in another state; orders to appear) through 5363 (relating to request for court records of another state). If a court of this Commonwealth has made a custody decree before being informed of a pending proceeding in a court of another state, it shall immediately inform that court of the fact. If the court is informed that a proceeding was commenced in another state after it assumed jurisdiction, it shall likewise inform the other court to the end that the issues may be litigated in the more appropriate forum.

23 Pa.C.S. § 5347(c).

The UCCJA also specifies the court's power where a custody decree of another state exists:

> **(b) Restriction on modification of foreign decree.**—Unless required *in the interest of the child,* the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody, has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody. If the petitioner

has violated any other provision of a custody decree of another state, the court may decline to exercise its jurisdiction *unless the petitioner can show that conditions in the custodial household are physically or emotionally harmful to the child,* the burden of proof being on the petitioner requesting the court to take jurisdiction.

23 Pa.C.S. § 5349(b) (emphasis added).

We conclude from the limited record before us that the violent manner in which appellee initially obtained custody of the children and secreted them from appellant, his subsequent abandonment of them for several weeks at a time, and the children's resultant physical and emotional condition, requiring appellant to return to Alabama as soon as she became aware of their plight, established appellant's burden of proof for the Court of Common Pleas of Bucks County to exercise jurisdiction in this case. However, we also recognize the due process rights of appellee, and while we do not elevate them over the best interest of the children, we find both to be served better by amplification in further proceedings before the trial court. This is especially so given the contradiction between appellant's allegation that she was never served with a summons in connection with appellee's motion for immediate temporary custody, and was unaware of any custody proceedings in Alabama beyond her divorce complaint, and the copy of the summons indicating a deputy sheriff in Alabama personally served her with appellee's motion on September 11, 1992.

We therefore direct the trial court, on remand, if it has not already done so, to communicate with the Circuit Court in Alabama, and set forth in the record the content and results of that communication. If necessary, the trial court may adduce further testimony from witnesses in Alabama, and may request that the Circuit Court hold a similar hearing or forward transcripts of any hearing held or social study prepared. 23 Pa.C.S. §§ 5359, 5360.

We fail to see how surrendering jurisdiction to Alabama without a significant inquiry into the matters appearing of

record will be in the best interest of the children or advance the cause of justice.

Order reversed and remanded for proceedings consistent with this Opinion.

Jurisdiction relinquished.

WIEAND, J., dissents.

WIEAND, Judge, dissenting.

I respectfully dissent. The trial court's order transferring this custody proceeding to Alabama, where the parties had resided with their children prior to separation and where custody proceedings were pending, was correct and in accordance with the mandate of the Uniform Child Custody Jurisdiction Act, 23 Pa.C.S. §§ 5341 et seq. Therefore, I would affirm the order of the trial court.