**Janet Cottone LUCAS, Appellant,**

v.

**Curt LUCAS, Appellee.**

Superior Court of Pennsylvania.

Submitted May 2, 2005.
Filed Aug. 23, 2005.

---

Brian J. Cali, Dunmore, for appellant.

Jan Kuha, Dickson City, for appellee.

Before: MUSMANNO, BOWES and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Janet Lucas appeals the October 25, 2004 Order granting appellee Curt Lucas' motion to strike the special relief Order of July 26, 2004. The special relief Order granted to appellant custody of the parties' two minor children, prohibited appellee's removal of the children from the Commonwealth of Pennsylvania without further Order of court, and held that a hearing on the matter would be conducted on August 17, 2004.

¶ 2 On August 9, 2004, appellee filed the motion to strike the July 26, 2004 special relief Order. The motion indicated that on July 19, 2004, appellee filed a complaint in divorce in the Court of Common Pleas, Domestic Relations Division, Summit County, Ohio, and, on that same date, that court entered a mutual restraining Order

in connection with the proceeding. The restraining Order indicated that a local rule of Summit County, Ohio, prohibited either party from changing or establishing a new residence for the minor children without the written consent of the other party or permission of the court.[1] Appellant received a copy of the Order after the special relief Order had been granted.

¶ 3 On September 14, 2004, a hearing was held on appellee's motion to strike. Appellee did not appear at the hearing, but he was represented by counsel. The court found that credible evidence established the following:

> On or about January 10, 2004, Curt Lucas moved out of his family residence and for all intents and purposes abandoned his wife and children and moved into another residence with his paramour. Thereafter, he provided his wife, Janet Cottone Lucas, with no support for herself or her children. The family residence was sold and the equity placed in escrow pending the resolution of a marital settlement distribution. Janet Cottone Lucas was without funds and following the sale of the house, without residence, took the parties' two children, Amanda Caroline who was born June 2, 2000, and Rebecca Helen who was born June 19, 2002, to Scranton, Pennsylvania were all of the relatives of the Plaintiff and the Defendant reside. The credible testimony reflected that she moved to Scranton with the children because of her inability to reside and support them in Ohio and because of the presence of members of the Defendant's family who helped her financially as well as members of her own family who helped her financially in Scranton, Pennsylvania. On July 6, 2004, she entered into a Lease Agreement with relatives for an apartment that included three bedrooms for herself and her children and has resided therein with her two children since accepting financial gifts and advances from members of both of the parties' families because of the Defendant's refusal to provide her with any support. This conduct by the Defendant in causing the marital residence to be sold out from under the Plaintiff herein, coupled with his refusal to provide any support for the children or his wife, Janet Cottone Lucas, is somewhat startling considering the conduct of h[im] and/or his lawyers in connection with the custody proceeding that was instituted in this Court and is particularly alarming considering that credible testimony reflected that Curt Lucas and his paramour vacationed in Mexico during the period of time when Janet Cottone Lucas was receiving no support from him and was essentially living on monies provided by family members. This Court was provided with no explanation for such conduct.

.     .     .     .     .

> This Court finds as a fact based on the credible evidence that the reason for the mother, Janet Cottone Lucas, bringing the children to Scranton, Pennsylvania was to be able to live and have residence of their own rather than a shelter and to be in a position to secure the financial help needed to purchase food, clothing and other necessities. There is nothing whatsoever in the record to suggest that Janet Cottone Lucas moved back to their hometown to gain any type of legal advantage. She was simply attempting to survive with her two children in view of the conduct of their father and her husband in refusing to provide her with any money or with a

---

1. *See* Record # 3, Motion to Strike Special Relief Order, Exhibit B.

place to live after the sale of the parties' home in September of 2004.

Trial Court Opinion, O'Malley, J., 10/25/04, at 2–4.[2] The court then went on to conclude the following:

> Despite the fact that all of the equities in this matter would suggest the appropriate jurisdiction to concern itself with custody would be Lackawanna County, Pennsylvania, the Commonwealth of Pennsylvania is a party to the Uniform Child Custody Jurisdiction Act (UC-CJA)[3] and under the mandates of that Act the Court of Common Pleas of Summit County, Ohio appears to be the appropriate Court. The Defendant herein instituted a divorce action on July 19, 2004, one week before the Petition for Custody was filed in Lackawanna County, Pennsylvania. Significantly, a Restraining Order was entered against the parties on July 19, 2004 that concerned itself with establishing residences for the parties' minor children.

For the reasons set forth in this Memorandum, the Motion To Strike Special Relief Order will be granted.

*Id.*, at 4–5.[4]

¶ 4 This timely appeal followed in which appellant raises the following issue for our review:

> Whether the evidence before the trial court was such to justify the trial court striking and vacating its Special Relief Order of July 26, 2004, and declining jurisdiction despite the trial court finding that the minor children were physically present in the Commonwealth and the minor children were abandoned by their father in Ohio?

Appellant's brief at 6. Appellant argues that she changed her residence to Pennsylvania on July 6, 2004 and husband filed the divorce action in Ohio on July 19, 2004. Therefore, she did not violate the July 19, 2004 restraining Order which prohibited either party from changing residences without the written consent of the other party or permission of court. She also

---

2. The factual timeline in this case can be summarized as follows. Appellee left appellant and the children in January 2004 and moved in with his girlfriend. N.T., at 87–88, 91–92. At that time, he told appellant that the parties' house would be sold. *Id.*, at 91–92. Appellant signed a lease for an apartment in Pennsylvania on July 6, 2004, but actually moved from Ohio with the children on July 19th. *Id.*, at 11, 90. On July 19, 2004, appellee filed the divorce complaint in Ohio and the court in Ohio issued the mutual restraining Order prohibiting either party from establishing a new residence for the parties' minor children without the written consent of the other party or permission of court. On July 26, 2004, appellant filed the motion for special relief in Pennsylvania. She received notice of the divorce complaint on July 27, 2004. *Id.*, at 111.

3. The Uniform Child Custody Jurisdiction Act (UCCJA) was codified at 23 Pa.C.S.A. §§ 5341–5366, but was repealed by 2004, June 15, P.L. 236, No. 39, § 2, effective Aug.

16, 2004. The current version of the UCCJA is codified at 23 Pa.C.S.A §§ 5401–5482. Section 5 of 2004, June 15, P.L. 236 provides that "[a] proceeding under 23 Pa.C.S. Ch. 53 which was commenced before the effective date of this act is governed by the law in effect at the time the proceeding was initiated." Since the instant action was commenced prior to August 16, 2004, the former version of the UCCJA is applicable here. *See O'Gwynn v. Hebert*, 878 A.2d 119, n. 2 (Pa.Super.2005). *All references to the UCCJA in this Opinion, therefore, are to the version of the UCCJA in existence on July 26, 2004.*

4. We note that this is the extent of the trial court's analysis of the UCCJA. The court cited no provisions of the Act, but merely stated that Pennsylvania is a party to the UCCJA and "under the mandates of that Act the Court of Common Pleas of Summit County, Ohio appears to be the appropriate Court." Trial Court Opinion, O'Malley, J., 10/25/04, at 5.

contends that the criteria for jurisdiction set forth in UCCJA § 5344 are met since (1) the record establishes that, pursuant to UCCJA § 5344(a)(2), mother and children have a significant connection with this Commonwealth and therefore it is in the children's best interest for the Commonwealth to assume jurisdiction, and substantial evidence is available in this Commonwealth as to the children's care, protection, training, and personal relationships; and because (2) the children were abandoned by father pursuant to UCCJA § 5344(a)(3).

A court's decision to exercise or decline jurisdiction is subject to an abuse of discretion standard of review and will not be disturbed absent an abuse of that discretion. Under Pennsylvania law, an abuse of discretion occurs when the court has overridden or misapplied the law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings. An abuse of discretion requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures.

*McCoy v. Thresh,* 862 A.2d 109, 112 (Pa.Super.2004) (citations omitted).

¶ 5 The parties do not dispute the trial court's finding that the UCCJA is applicable to this case. We agree with this conclusion. UCCJA Section 5344, **Jurisdiction**, provided, in pertinent part:

    **(a) General rule.**—A court of this Commonwealth which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

    (1) this Commonwealth:

        (i) is the home state of the child at the time of commencement of the proceeding; or

        (ii) had been the home state of the child within six (6) months before the commencement of the proceeding and the child is absent from this Commonwealth because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this Commonwealth;

    (2) it is in the best interest of the child that a court of this Commonwealth assume jurisdiction because:

        (i) the child and his parents, or the child and at least one contestant, have a significant connection with this Commonwealth; and

        (ii) there is available in this Commonwealth substantial evidence concerning the present or future care, protection, training and personal relationships of the child;

    (3) the child is physically present in this Commonwealth and:

        (i) the child has been abandoned; or

        (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; . . .

23 Pa.C.S.A. § 5344(a). The clear language of the statute indicates that the bases for jurisdiction thereunder are alternative. Jurisdiction under the Act may be based on "home state jurisdiction," "significant contacts,"[5] or *"parens patriae"* jurisdiction for those emergency situations where a child is abandoned, abused, or dependent. *Tettis v. Boyum,* 317 Pa.Super. 8, 463 A.2d 1056, 1059 (1983); *see also*

---

**5.** We use the terms significant contacts and significant connection interchangeably in this Opinion.

*Shaw v. Shaw,* 719 A.2d 359, 360 (Pa.Super.1998); 23 Pa.C.S.A. § 5344. The "home state" is the preferred basis for jurisdiction pursuant to the UCCJA. *McCoy, supra,* at 113, *citing Dincer v. Dincer,* 549 Pa. 309, 701 A.2d 210 (1997). Section 5343 defined "home state" in relevant part as: "The state in which the child immediately preceding the time involved lived with his parents, a parent or a person acting as parent, or in an institution, for at least six consecutive months...." 23 Pa. C.S.A. § 5343. There can be no question that the "home state" here is Ohio. The children had lived in Ohio for their entire lives and had resided in Pennsylvania for approximately one week when this action was filed in Pennsylvania. *See* N.T., 9/14/04, at 4. "The determination of a child's home state, however, does not automatically confer jurisdiction upon that state." *Baines v. Williams,* 431 Pa.Super. 72, 635 A.2d 1077, 1080–1081 (1993). "[T]he Act clearly implies that there *will* be factual situations that will impel a court to accept jurisdiction even when 'home' jurisdiction exists elsewhere." *Tettis, supra,* at 1061 (emphasis in original).

¶ 6 After conducting a "home state analysis," a court must perform a "significant connection analysis" pursuant to Section 5344(a)(2). *See Dincer,* at 318, 701 at 214–215. First though, we note that jurisdiction is determined *at the time the action is commenced. Id.,* at 320, 701 A.2d at 215; *see also Favacchia v. Favacchia,* 769 A.2d 531, 538–539 (Pa.Super.2001). Though it is clear from the record that appellant and the children have settled into life in Pennsylvania since moving, and therefore have since developed a "significant connection" to the Commonwealth, that is "of no moment." *Dincer,* at 320, 701 A.2d at 215. It must be determined rather, whether, *at the time wife commenced this action in Pennsylvania, i.e., on July 26, 2004,* "the child[ren] and

[their] parents, or the child[ren] and at least one contestant, [had] a significant connection with this Commonwealth." 23 Pa.C.S.A. § 5344(a)(2)(i). Section 5344(a)(2) *also* requires that in addition to a significant connection, "there is available in this Commonwealth substantial evidence concerning the present or future care, protection, training and personal relationships of the child." 23 Pa.C.S.A. § 5344(a)(2)(ii).

¶ 7 The parties were married in Pennsylvania in April 1995 and moved to Ohio in November 1996. N.T., at 4. The majority of the parties' respective families have remained in Pennsylvania. *Id.,* at 79, 100. Appellant moved from Ohio back to Pennsylvania on July 19, 2004, just one week prior to the July 26, 2004 commencement of this action. N.T., at 11. Appellee remained in Ohio. The children lived in Ohio their entire lives until July 19, 2004, at which point they were two and four-years-old; they were baptized, however, in Scranton, Pennsylvania. *Id.,* at 4–11, 111. It appears that, historically, both parties had significant connections with this Commonwealth; but since they moved to Ohio in November 1996, and until appellant's return with the children in July 2004, the record reveals almost no evidence of any connection except for the presence of relatives in the Commonwealth. Similarly, besides the children's baptism and the presence of relatives in the Commonwealth, the record reveals no connection between the children and the Commonwealth.

¶ 8 These facts are not dissimilar from those in *Dincer, supra.* In *Dincer,* our Supreme Court reversed the Order which determined that Pennsylvania had jurisdiction over the divorce action. In *Dincer,* the mother was born and raised in Pennsylvania and the children had visited their maternal grandparents in Pennsylvania every year for one month. One year, mother

brought the three children, all younger than ten-years-old, to Pennsylvania for a visit with her parents, but did not return to Belgium where the parties had lived, as was planned. While visiting her family in Pennsylvania, mother filed the underlying complaint in custody and petition for special relief. At that time, she had been in Pennsylvania for only two weeks, and thus no school records or other evidence regarding the children's care or training was available here. Based upon these facts, our Supreme Court held that *at the time mother filed the action* in Pennsylvania, there lacked a significant connection. The Court also noted, *inter alia*, that since father objected to the children's relocation, to allow mother to gain advantage by bringing the children here would be contrary to the UCCJA. Pennsylvania did not have jurisdiction under the home state test either.

¶ 9 Here, there is no evidence that mother moved to Pennsylvania for any legal advantage, or for any other nefarious reason, but rather for the financial support of family since appellee, who earned a good living, left his family with no financial support and sold the house in which they lived. Otherwise, however, in terms of the lack of contacts with Pennsylvania, this case is very similar factually to *Dincer*. In fact, in *Dincer*, there was evidence of more contact with the Commonwealth since in that case, the record revealed that the children had spent a month each year with relatives in the Commonwealth.

¶ 10 We also rely upon our Court's more recent holding in *McCoy v. Thresh*, 862 A.2d 109 (Pa.Super.2004). In *McCoy*, the parties lived in California with their son from the time their child was born until the parties separated. Upon separation, father moved to Pennsylvania. The child

visited father in Pennsylvania, and after the visit, father refused to return the then seven-year-old child to California. Five and one-half months later, mother came to Pennsylvania, and took the child back to California with her, against father's wishes. Father then filed the underlying custody complaint. The trial court declined jurisdiction pursuant to the UCCJA. On appeal, father argued that the child had significant contacts with the Commonwealth since he attended school and church in Pennsylvania, had family members here, and desired to live here. We affirmed the trial court, agreeing with the court that Pennsylvania was not the child's home state, and also that the child lacked significant contacts with the state. The child had lived his entire life in California with the exception of five and one-half months after the parties' separation. Significantly too, the majority of the witnesses with information as to the child's best interest, i.e. "doctors, teachers, child care providers, and those familiar with the parenting abilities of the parties" were located in California. *Id.*, at 1114–115.

¶ 11 Based upon *Dincer* and *McCoy*, it is clear that in this case, Pennsylvania lacks jurisdiction under the significant connection test. As the *Dincer* Court noted, the significant connection test under UCCJA § 5344 is a *maximum*, not a minimum, contacts test. *Dincer*, at 319, 701 A.2d at 215. The following excerpt best articulates that a forum with *maximum* contacts with the child best serves that interest, and the exercise of jurisdiction must do just that, i.e., serve the child's best interest:

> ... [the section's] *purpose is to limit jurisdiction* rather than to proliferate it. The first clause of the paragraph is important: jurisdiction exists only if it is in the child's interest,[6] not merely the in-

**6.** As a reminder, the UCCJA provides that a court of this Commonwealth has jurisdiction

530

terest or convenience of the feuding parties, to determine custody in a particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be *maximum* rather than *minimum* contact with the state.

*Barndt v. Barndt,* 397 Pa.Super. 321, 580 A.2d 320, 323 (1990) *quoting* the Commissioner's Notes to the Uniform Child Custody Jurisdiction Act § 3 (emphasis in original); *see also Baines v. Williams,* 431 Pa.Super. 72, 635 A.2d 1077, 1081 (1993) (reiterating that "the interest of the child is served by the forum with optimum access to relevant evidence about the child and family").

¶ 12 Here, Pennsylvania does *not* have optimum access to relevant information about the child and family. By contrast, the record reveals that since birth, all medical and dental care for the children was provided in Ohio. *Id.,* at 11–13, 23–27. The children were enrolled in an Ohio preschool. *Id.* Further, mother was active in the Ohio community in which they lived. *Id.,* at 13–14. We mention these Ohio connections only as an illustration of a forum that does have optimum access to relevant evidence about the child and family. *See Dincer, supra,* at 320, 701 A.2d at 215–216 (Cautioning that in performing a "significant connections" analysis, a court is not to measure its claim against that of another jurisdiction).

¶ 13 While the requirements of Section 5344(a)(2)(ii) are likely met in this case, namely that "there is available in this

Commonwealth substantial evidence concerning the *present or future care,* protection, training and personal relationships of the child," 23 Pa.C.S.A. § 5344(a)(2)(ii) (emphasis supplied), the unambiguous statutory language requires that both subsections of Section 5344(a)(2) are met. Accordingly, we find the Commonwealth does not have jurisdiction based upon "significant contacts."

¶ 14 We conclude our "significant connection" discussion by stating that we find appellee's conduct to be abhorrent. We sympathize with appellant's situation, apparently she had little choice but to relocate to be near family in Pennsylvania, and attendance at proceedings in Ohio will impose an undue burden on her. We are however confined by the applicable statutory provisions and the extant interpretations of that law. It is noteworthy that our Supreme Court in *Dincer* rejected a "flexible" application of the significant contacts test which had been proposed in order to best effectuate a child's best interest. The Court instead stressed the above concept that the purpose of Section 5344 is to limit jurisdiction, not proliferate it, and that there must be *maximum,* not minimum, contacts. *Dincer,* at 318–319, 701 A.2d at 215.

¶ 15 Finally, appellant argues that jurisdiction is proper under Section 5344(a)(3)(i) because the children have been abandoned. She bases this argument on the uncontroverted facts that since appellee left the marital home in January 2004, he has not paid child or spousal

to make a child custody determination if:
  *it is in the best interest of the child that a court of this Commonwealth assume jurisdiction because:*
    (i) the child and his parents, or the child and at least one contestant, have a significant connection with this Commonwealth; and

    (ii) there is available in this Commonwealth substantial evidence concerning the present or future care, protection, training and personal relationships of the child;
23  Pa.C.S.A. § 5344(2) (emphasis supplied).

support, or otherwise supported appellant and their children, and that he forced the sale of the house. As a result, appellant states she was forced to move near family in Scranton, Pennsylvania, and otherwise she and the children would be in a homeless shelter. She stresses that this is true even though appellee's annual earnings exceed $100,000, and since the separation, he has vacationed in Mexico.

¶16 In determining whether the children were abandoned under the meaning of Section 5344(a)(3)(i), we are guided by accompanying official uniform law comments.

> Paragraph (3) of subsection (a) retains and reaffirms *parens patriae* jurisdiction, *usually exercised by a juvenile court, which a state must assume when a child is in a situation requiring immediate protection.* This jurisdiction exists when a child has been abandoned and in emergency cases of child neglect. Presence of the child in the state is the only prerequisite. This extraordinary jurisdiction is reserved for extraordinary circumstances. When there is child neglect without emergency or abandonment, jurisdiction cannot be based on this paragraph.

23 Pa.C.S.A. § 5344, Uniform Law Comments. (citation omitted, emphasis supplied). Considering this plain language, it is clear to this Court that the circumstances here are not equivalent to the abandonment contemplated by the Act. The children are not in a situation such that they require the "immediate protection" of the state. *Id.*[7]

---

7. As an aside, we note that as of the hearing in this matter, appellee had been visiting with the children every other weekend pursuant to an agreement between the parties. N.T., at 128. Even if this were not the case, however, the facts do not indicate the type of abandonment contemplated by the Act. Further, although appellant complains that appellee is not voluntarily supporting his children financially, appellant may wish to seek relief from a court on this issue. Appellee's failure in this respect does not equate to abandonment as contemplated by the Act.

¶17 Regrettably, we must affirm the trial court's decision to decline jurisdiction. We note that the trial court cited the UCCJA as the basis for its decision, but cited no sections that it found pertinent, and provided almost no analysis as to its conclusion. We are permitted however, to affirm on any basis. *Devine v. Hutt*, 863 A.2d 1160, 1170 (reiterating that an appellate court may affirm an Order of trial court on any basis if decision is correct.) We affirm because we find no basis under the UCCJA upon which to exercise jurisdiction in this matter.

¶18 Order affirmed.