J-S05003-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| A.S.C., NOW A.S.L. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| N.B.C. | : | |
| | : | |
| Appellant | : | No. 747 WDA 2018 |
| | : | |

Appeal from the Order Entered May 17, 2018
In the Court of Common Pleas of Indiana County
Civil Division at No(s): 10486 CD 2012

BEFORE:   PANELLA, P.J., NICHOLS, J., and STRASSBURGER*, J.

MEMORANDUM BY PANELLA, P.J.:                    FILED AUGUST 28, 2019

N.B.C. ("Father") appeals from the order awarding child support to be paid to A.S.C., now A.S.L. (Mother), his former spouse.[1] Father challenges the jurisdiction of the trial court, the applicability of Pa.R.C.P. 1910.19(g)(1) to the treatment of overpayments in this case, and the accuracy of the calculation of the amount of support.  We affirm.

_____

* Retired Senior Judge assigned to the Superior Court.

[1] Although referred to in the briefs as the April 17 order, the order was filed and date stamped on May 17, 2018.  We have amended the caption accordingly.  To avoid confusion, we will continue to refer to the order as the April 17 order.

The background of this case is somewhat complicated, with multiple actions occurring in Pennsylvania as well as related legal actions in Virginia and California.[2] We derive our factual and procedural history from the trial court opinions and our independent review of the certified record. See 1925(a) Opinion, 7/06/18, 1-2; see also Memorandum & Order of Court, 8/31/17, at 2-8.

Father and Mother were married in North Carolina. They both serve as officers in the United States Marine Corps. Mother was a resident of Pennsylvania before she joined the Marines. Because of their military service, they are subject to frequent transfers in the course of their assigned duties.

This case is integrally related to the immediately prior case for child support. In that prior case, Mother appealed the order of August 31, 2017, which modified a previous support order. This Court affirmed that order on July 16, 2018. See A.S.C. v. N.B.C., No. 1427 WDA 2017, 2018 WL 3423742, at *1–2 (Pa. Super. filed July 16, 2018) (unpublished memorandum).

The trial court in the prior case provided the following factual and procedural history:

> The parties were married in May of 2006 and divorced on June 25, 2012. The March 22, 2012 Marital Property Settlement Agreement was incorporated into the final Divorce Decree and Order filed in the Court of Common Pleas of Indiana County,

_____

[2] The respective judges in California and Pennsylvania decided that the custody action would stay with the courts of California, while the issue of child support would remain in Pennsylvania. See Order of Court, 5/15/15; see also Opinion in Support of Order Pursuant to Rule 1925(a), 11/22/17, at 2.

Pennsylvania. The parties have two children, [A.C.], age 10, born June [ ] 2007, and [D.C.], age 7, born July [ ] 2010. The Marital Property Settlement Agreement provided that [Father] would pay child support to [Mother] in the amount of $2,000.00 by the 15th of every month. In addition to the Marital Property Settlement Agreement, the parties entered into a Consent Custody Agreement on March 22, 2012, which granted the parties shared legal custody with [Mother] receiving primary physical custody and [Father] receiving partial physical custody.

Subsequent to the divorce, the parties, both Officers in the United States Military, moved to the state of California. Both parties have since remarried, seemingly causing the parties['] previously amicable post-divorce relationship to unravel. Then, in the spring of 2015, [Mother] made a military transfer to Bahrain. Upon learning of [Mother's] military transfer, [Father] initiated a custody action in California. Within the course of said lengthy custody action, the parties began to communicate and negotiate via multiple platforms since [Mother] was stationed overseas. The parties exchanged several offers and counteroffers while negotiating terms and eventually reached an agreement regarding each party's custody rights to children. The agreement provided that [Mother] would receive sole legal and physical custody of the minor children, that [Father] would receive specific visitations times, and that the children were allowed to relocate with [Mother] whenever it becomes necessary for [Mother's] employment even without [Father's] approval. Both parties signed this agreement on March 30, 2016[,] and the agreement was filed on April 29, 2016. It is important to note that this agreement made no mention of child support payments.

The parties' stories regarding the formation and terms of said agreement differ and have led to the present matter. [Father] claims that he signed the March 30, 2016 agreement after negotiating a modification in child support payments with [Mother]. Citing to text message communications and emails between the parties, [Father] avers that the parties had an agreement to modify the child support payments from the $2000 per month contained in the Marital Property Settlement Agreement to $500 per month from May 1, 2016 through April 30, 2017; then $1,000 per month from May 1, 2017 through April 30, 2018; and lastly to $1,500 per month from May 1, 2018 through July 22, 2028. [Father] further avers that the parties did not formalize the child support portion of their agreement because

- 3 -

Pennsylvania, not California, maintained jurisdiction over the child support payments. Moreover, [Father] cites additional messages indicating that [Mother] was to draft the child support provision in another document which the parties would sign and notarize and that [Mother] would file in Pennsylvania. It is [Father's] argument that he signed the terms of the California agreement after the parties agreed to the child support modification terms, and that he relied upon [Mother] to file the second part of their agreement in Pennsylvania. To this point, [Mother] has not filed such a document in Pennsylvania.

[Mother] claims that no such agreement to modify the terms of child support was ever reached. She avers that the parties reached the agreement in exchange for [Mother's] not pursuing sanctions and attorney's fees against [Father] related to their California custody case. Moreover, [Mother] claims that she has not had the Apple ID listed in [Father's] exhibits since 2012/2013, and that she closed her former Gmail account in the spring of 2015. As such, she claims that nothing would have been sent to [Father] after 2013 using the Apple ID listed in [Father's] exhibits.

Since the parties entered into their California agreement, [Mother] left California and moved with the children to Virginia. [Father], operating under the belief that the parties reached an agreement modifying his child support obligation, began making modified child support payments to [Mother]. [Mother] then alleged that [Father] was delinquent in his support payments, leading to [Father's] receiving a letter from the Commonwealth of Virginia, Department of Social Services, Division of Child Support Enforcement, informing him that [Mother] had opened a case against him. Beginning in late 2016, even after meeting with the case manager in Virginia and consulting an attorney in Virginia, [Father's] wages were garnished. These actions led to the filing of the Petition under consideration herein.

Id. at *1–2 (citing Trial Court Memorandum & Order, 8/31/17, at 2-4) (brackets in original).

After Mother filed for child support in Pennsylvania, Father filed a petition for Special Relief/Modification of Marital Agreement. On August 31,

2017, the Honorable Joseph A. Nickleach issued a Memorandum and Order granting Father's petition.

Judge Nickleach's decision essentially accepted Father's representation, confirmed by an extensive collection of email correspondence, that he and Mother had agreed between themselves (without benefit of counsel) that he would relinquish his claim for custody of the children (filed after Mother relocated to Virginia), while Mother agreed to accept a near-term reduction in support payments and the extension of the term of payments until the majority of the younger child and other incidental considerations. Mother, as already noted, disagreed.

The order accordingly set forth Father's child support obligations in a series of reduced installments.[3] Mother timely appealed. On appeal, this Court

_____

[3] We reproduce the order of August 31, 2017 verbatim:

ORDER OF COURT

AND NOW, this 31st day of August, 2017, this matter having come before the Court on a Petition for Special Relief/Modification of Marital Agreement filed by the Defendant, and after reviewing the briefs submitted by both parties and for the reasons set forth in the Memorandum herein, it is ORDERED, ADJUDGED, and DECREED as follows:

1. The Defendant's Petition for Special Relief/Modification of Marital Agreement is hereby GRANTED.

2. The Defendant is ordered to pay Child Support subject to the following terms:

affirmed. See A.S.C. v. N.B.C., No. 1427 WDA 2017, 2018 WL 3423742, at *1–2 (Pa. Super. filed July 16, 2018).

During the appeal, Father had ceased support payments, assuming that his overpayments in the Virginia wage garnishment offset the amounts currently due in Pennsylvania. Mother filed a complaint for support with the Indiana County Domestic Relations Section on September 12, 2017. On January 3, 2018, Mother filed a motion for contempt, asserting that Father had violated the order of August 31, 2017 by failure to pay child support since September 7, 2017.

_____

a. Defendant's Child Support obligation to Plaintiff shall be calculated as $500.00 per month from May 1, 2016 through April 30, 2017. Any amount paid exceeding said payment shall be credited to future support obligations.

b. Defendant's Child Support obligation to Plaintiff shall be calculated as $1,000.00 per month from May 1, 2017 until the date hereon. Any amount paid exceeding said payment shall be credited to future support obligations.

c. Defendant's Child Support obligation to Plaintiff shall be calculated as $1,000.00 per month from the date hereon until April 30, 2018.

d. The Defendant's Child Support obligation to Plaintiff shall be calculated as $1,500.00 from May 1, 2018 through July 22, 2028.
e. Payments shall be paid by the 15th of every month.

Order of Court, 8/31/17.

Father filed a motion to dismiss Mother's motion or to stay the proceedings pending appeal. By order of January 19, 2018, the Honorable Thomas M. Bianco, Court of Common Pleas of Indiana County, denied Father's motion to dismiss, but granted his petition to stay the complaint for child support. See Order of Court, 1/19/18.[4] In a separate order, Judge Bianco scheduled a hearing for April 13, 2018.

President Judge William J. Martin presided over the April 13 hearing on the motion. See N.T., Record of Proceedings, 4/13/18. Following the hearing, the trial court filed an order for child support.[5] See Order of Court dated April

_____

[4] Father concedes that the petition to stay/dismiss and the answer to that petition are not contained in the docket. See Father's Brief, at 10 n.1. However, Judge Bianco's January 19, 2018 order is entered on the docket. See Order 1/19/18 (dated January 12, 2018). Furthermore, at the hearing, President Judge Martin acknowledged on the record that the predecessor judge (Judge Bianco) granted the stay "as to the filing dates of September 12, 2017" (referring to Mother's complaint for support through the Indiana County Domestic Relations Section, under a separate docket number). N.T. Record of Proceedings, 4/13/18, at 3.

[5] The full text of the order of April 17, 2018 follows:

> AND NOW, 17th day of April 2018, pursuant to this Court's Order of April 13, 2018, the [c]ourt makes the following Findings and Order.
>
> 1. Upon remand to the Indiana County Domestic Relations Office, the Defendant's monthly child support obligation is $1,500.00 effective May 1, 2018 pursuant to the August 31, 2017 Order of the Honorable Joseph A. Nickleach.

17, 2018. See Rule 1925(a) Opinion, 7/06/18, at 1 n.1. At the time, the appeal of the August 31, 2017 order was still pending in this Court.

_____

       2. Based upon the required child support payments of the Order of August 31. 2017, the Defendant is in arrears in the amount of $3,448.31 as of August 31, 2017.

       3. Based upon the prior wage attachment in the Commonwealth of Virginia, based on the Order of August 31, 2017, the Defendant has overpaid on his child support obligation in the amount of $16,051.69. The overpayment is being reduced by $1,000 a month for the last 7 months.

       4. The Defendant is due a net credit of $9,066.34 through April 2018 toward the child support obligation established by the August 31, 2017 Order.

       5. After adjustment pursuant to Pa.R.C.P. No 1910.19 (g) (1), the Defendant's monthly child support obligation pursuant to the Order of August 31, 2017 is $1,426.29. ($9,066.34 divided by 123 months, which is the number of months until the last child emancipates = $73.71 from $1,500)[.]

       6. The payment for April 2018 shall be paid on or before April 30, 2018.

       7. All monthly payments after April 2018 shall be paid so that the support obligation is received on or before the 15th day of each month.

       8. Payments shall be paid by the Defendant directly to the Plaintiff. It is the responsibility of each party to keep the other informed or any change of address.

Order, 4/17/18.

Notably, President Judge Martin confirmed that Judge Nickleach's order of August 31, 2017 was the controlling order and continued to be in full force and effect. See N.T. Proceedings, 4/13/18, at 3. The court denied Mother's motion for contempt. However, it did find that Father was in arrears on child support by $3,448.31. Nevertheless, based on the wage garnishment in Virginia, the court also found that Father had overpaid by $16,051.69. Therefore, the court concluded, he had overpaid a net amount of $9,066.34. Father's timely appeal followed.[6]

Father raises three questions for our review on appeal. We reproduce them here verbatim except for the bracketed material:

> 1. Did the trial court have jurisdiction to change or enforce the Appellant Father's support obligation under the August 31, 2017, Order of Judge Joseph Nickleach, when said order was on appeal and jurisdiction was vested in the Superior Court?
>
> 2. Did the trial court [err] in the application of Pa.R.C.P. 1910.19(g)(1), a domestic relations rule, to this case when the Appellant Father's support obligation was created by a contractual marriage settlement agreement?
>
> 3. Arguendo, if it is determined that the trial court did not [err] in applying Pa.R.C.P. 1910.19 (g)(1) to this child support matter, did the trial court error in its calculations and determination of the actual amount of support to be paid by the Appellant Father?

Father's Brief, at 5.

_____

[6] Father timely filed a concise statement of errors complained of on appeal, on June 12, 2018. The trial court filed a Rule 1925(a) opinion, on July 6, 2018. See Pa.R.A.P. 1925.

Father's first issue challenges the jurisdiction of the trial court. Our standard of review for a challenge to jurisdiction is well-settled.

"Subject matter jurisdiction speaks to the competency of a court to hear and adjudicate the type of controversy presented. Jurisdiction is purely a question of law; the appellate standard of review is de novo and the scope of review is plenary." Commonwealth v. Elia, 83 A.3d 254, 265 (Pa. Super. 2013) (citations omitted).

> A court's decision to exercise or decline jurisdiction is subject to an abuse of discretion standard of review and will not be disturbed absent an abuse of that discretion. Under Pennsylvania law, an abuse of discretion occurs when the court has overridden or misapplied the law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings. An abuse of discretion requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures.

Lucas v. Lucas, 882 A.2d 523, 527 (Pa. Super. 2005) (citation omitted).

Here, Father mainly argues that because an appeal was pending, the trial court lacked jurisdiction to consider Mother's motion. See Father's Brief, at 9-11. Father acknowledges that the trial court may enforce an order under Pa.R.A.P. 1701(b)(2).[7] See id. at 9-10. Nevertheless, he maintains that the

---

[7] Section 1701 provides, in relevant part:

> (b) Authority of a trial court or agency after appeal. After an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may:

effect of the order was superseded by his petition to stay. See id. at 11. We disagree.

> [T]rial court[s] possess inherent powers to enforce their orders and decrees by imposing sanctions for failure to comply with their orders. This power is retained even after an appeal is filed, absent a supersedeas. See Pa.R.A.P. 1701(b)(2). Our review of the record in the instant case shows that no supersedeas had been granted.

Travitzky v. Travitzky, 534 A.2d 1081, 1084 n.3 (Pa. Super. 1987) (case citation omitted).[8]

Preliminarily, we note that Father's argument contradicts the express assertion of the trial court that it was only enforcing Judge Nickleach's order. See N.T. Record of Proceedings. 4/13/18, at 4, 6; see also 1925(a) opinion,

---

> (1) Take such action as may be necessary to preserve the status quo, correct formal errors in papers relating to the matter, cause the record to be transcribed, approved, filed and transmitted, grant leave to appeal in forma pauperis, grant supersedeas, and take other action permitted or required by these rules or otherwise ancillary to the appeal or petition for review proceeding.

> (2) Enforce any order entered in the matter, unless the effect of the order has been superseded as prescribed in this chapter.

Pa.R.A.P. 1701 (b)(1-2) (second emphasis added).

[8] We note that Father's citation to Travitsky gratuitously adds "or stay" after "supersedeas." See Father's Brief, at 10. "Or stay" supports Father's chief argument (that stay granted to him automatically operated as supersedeas for purpose of rule). However, "or stay" is not contained in the original Travitsky text. See Travitzky, 534 A.2d at 1084 n.3.

7/6/18, at unnumbered page 2. Father acknowledges this assertion, but disputes it. See Father's Brief, at 11. However, Father fails to develop a persuasive argument in support of his position.

Instead, in a single paragraph, Father asserts that he made substantial overpayments because the Virginia Department of Child Support Enforcement garnished his wages. See id. Even assuming this to be true, Father fails to relate the factual assertion of overpayment to his legal claim that his petition to stay (more precisely, the grant of his petition to stay) should be accepted as superseding the trial court's order. On independent review, we conclude the assertion lacks merit.

Father offers no controlling authority to support the claim that his petition for a stay is a legally recognized equivalent of a supersedeas which would prevent the trial court from issuing the order on appeal here.

To the contrary, the order granting the stay expressly noted that it was "in place until further Order of Court." Order, 1/19/18. Father offers no argument, and we discern no independent basis, to dispute that President Judge Martin's ruling at the hearing on April 13, 2018, and the confirming order on April 17, which is the basis of this appeal, constituted a further order of the court.

We recognize, as did the trial court, Father's desire to recoup any overpayments as soon as possible. See N.T. Proceedings, 4/13/18, at 6-7. However, it was well within the discretion of the trial court to decide that the

best interests of the children were better served by continuing support for them and offsetting the overpayments on a more gradual basis, rather than to let Father reduce his support payments to nothing until the overpayment is exhausted. We discern no abuse of discretion in the trial court's action. Father's first issue does not merit relief.

In his second issue, Father asserts that the trial court erred in the application of Pennsylvania Rule of Civil Procedure 1910.19(g)(1) to this case. See Father's Brief, at 5. This Rule provides that overpayments of child support should be recouped through an appropriate reduction, normally 20%, in ordered payments until the overpayment is retired. Father maintains that because the provision for child support was originally included in the parties' marital settlement agreement, the trial court erred in applying Rule 1910.19(g)(1) to the issue of child support here. See id. at 12-13. We disagree.

> Our standard of review is well-settled.
>
> Appellate review of support matters is governed by an abuse of discretion standard. When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. An abuse of discretion is [n]ot merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record. The principal goal in child support matters is to serve the best interests of the children through the provision of reasonable expenses.

R.K.J. v. S.P.K., 77 A.3d 33, 37 (Pa. Super. 2013) (citations and internal quotation marks omitted). "This is a limited role and, absent a clear abuse

of discretion, the appellate court will defer to the order of the trial court. A finding of abuse is not lightly made but only upon a showing of clear and convincing evidence." Christianson v. Ely, 838 A.2d 630, 634 (Pa. 2003) (citations and internal quotation marks omitted) (emphasis added). "In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests." R.C. v. J.S., 957 A.2d 759, 761–62 (Pa. Super. 2008) (citations omitted).

Here, bearing in mind the limited role we have in reviewing for an abuse of discretion, we conclude that there is no merit to Father's claim. His assumption that there is some preclusive effect to application of Rule 1910.19(g)(1) based on his classification of it as "a domestic relations section rule" enjoys neither the support of controlling authority, nor confirmation in the rule itself.[9] Father fails to develop an argument for his claim, or to support it by citation to pertinent authority.[10] Father's issue is waived.

Furthermore, Father's novel argument overlooks the reality that even if he and Mother had omitted a child support provision in their marital settlement agreement, there would still have been an absolute duty to provide support for the children. See R.C. v. J.S., 957 A.2d at 761–62.

_____

[9] The Domestic Relations Code is at Title 23, 23 Pa.C.S.A. §§ 101-8415.

[10] The rule at issue is part of the section in the Rules of Civil Procedure that addresses "Actions for Support." See Pa.R.C.P. 1910.1 - 1910.50.

Moreover, the trial court merely used the options provided in Rule 1910.19(g)(1) as a guide for the order. See 1925(a) Opinion, 7/6/18, at unnumbered page 4. Father offers no explanation why the trial court would be prevented from using the rule as a guide. We discern no abuse of discretion in this choice. Father's second issue does not merit relief.

In Father's final issue, he asserts that the trial court miscalculated the amount of support. See Father's Brief, at 5. Father argues, without confirming evidence, that the trial court relied on unofficial information, (through Indiana County Domestic Relations), some of it merely oral, from the Virginia Department of Child Support Enforcement. Much of the narrative, relying on the assertions of third parties, is inadmissible hearsay.[11]

In any event, Father concedes that counsel did not provide corrective information to the trial court at the time of the hearing, or file a timely motion for reconsideration. See Father's Brief, at 15. Nevertheless, he maintains that he filed a later motion for reconsideration, "which was promptly denied by the

---

[11] "Hearsay" means a statement that
>    (1) the declarant does not make while testifying at the current trial or hearing; and
>
>    (2) a party offers in evidence to prove the truth of the matter asserted in the statement.

Pa.R.E. 801(c)(1), (2).

court." Id. Father cites to the Reproduced Record for support. See id. citing RR at 42a-48a.

As already noted, our standard of review in support matters is abuse of discretion. See R.K.J., 77 A.3d at 37. "The standard of review with respect to the amount of a child support award also is largely within the sound discretion of the trial court." Miller v. Miller, 783 A.2d 832, 835 (Pa. Super. 2001) (emphasis added).

First, in this appeal, it bears noting that the trial court denies any notice that the amounts supplied to it were incorrect. See 1925(a) Opinion, 7/6/18, at unnumbered pages 3-4. The court also confirms that "Counsel failed to present this issue to the [c]ourt by way of a motion to Reconsider or for Modification." Id. at unpaginated page 4. The docket and the certified record support the trial court's statements.

> The fundamental tool for appellate review is the official record of the events that occurred in the trial court. To ensure that an appellate court has the necessary records, the Pennsylvania Rules of Appellate Procedure provide for the transmission of a certified record from the trial court to the appellate court. The law of Pennsylvania is well settled that matters which are not of record cannot be considered on appeal. Thus, an appellate court is limited to considering only the materials in the certified record when resolving an issue. In this regard, our law is the same in both the civil and criminal context because, under the Pennsylvania Rules of Appellate Procedure, any document which is not part of the officially certified record is deemed non-existent—a deficiency which cannot be remedied merely by including copies of the missing documents in a brief or in the reproduced record. The emphasis on the certified record is necessary because, unless the trial court certifies a document as part of the official record, the appellate judiciary has no way of knowing whether that piece of evidence was duly presented to the trial

court or whether it was produced for the first time on appeal and improperly inserted into the reproduced record. Simply put, if a document is not in the certified record, the Superior Court may not consider it.

This Court cannot meaningfully review claims raised on appeal unless we are provided with a full and complete certified record. This requirement is not a mere "technicality" nor is this a question of whether we are empowered to complain sua sponte of lacunae in the record. In the absence of an adequate certified record, there is no support for an appellant's arguments and, thus, there is no basis on which relief could be granted.

Commonwealth v. Preston, 904 A.2d 1, 6–7 (Pa. Super. 2006) (citations omitted) (emphasis added).

Father's claim of miscalculation is waived. Moreover, it would not merit relief. Failure to make a timely motion to the trial court deprived the court of an opportunity to review and correct any computational errors. See Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/28/2019

- 17 -