J-A09008-17

2017 PA Super 199

B.A.B.

           Appellant

           v.

J.J.B.

           Appellee

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 1804 MDA 2016

Appeal from the Order Entered October 5, 2016
In the Court of Common Pleas of Lebanon County
Civil Division at No(s): 2006-20469

BEFORE:  SHOGAN, J., OTT, J., and STABILE, J.

OPINION BY OTT, J.:                                **FILED JUNE 26, 2017**

B.A.B. (hereinafter "Mother") appeals from the order entered October 5, 2016, in the Lebanon County Court of Common Pleas, denying her petition to transfer the jurisdiction and venue of her child custody proceeding with J.J.B. (hereinafter "Father").  On appeal, Mother contends the trial court erred in denying her petition by:  (1) misapplying the law regarding venue for custody matters; (2) basing its ruling on insufficient evidence; and (3) improperly citing Mother's prior recusal request as a reason to deny the petition.  Mother also argues the trial court erred when it permitted a witness to testify telephonically at the venue hearing.  For the reasons below, we affirm.

As the trial court wisely comments in its opinion, "[n]othing about this case has ever been easy[.]"  Trial Court Opinion, 10/5/2016, at 1.  The

tortured procedural history underlying this appeal is as follows.[1] Mother and Father have been embroiled in a custody dispute over their three sons (Z.R.B., born February 2000; C.J.B., born May 2002; and C.M.B., born September 2003) since 2006.[2] Prior to their separation in May of 2006, the parties both lived in Lebanon County. Thereafter, Mother moved to York County. Father, who has always remained in Lebanon County, filed a complaint for custody in the Lebanon County Court of Common Pleas. The parties appeared before a custody conciliator, who issued a summary report in July of 2006. Following a *de novo* hearing, on October 6, 2006, the trial court entered an order granting Mother primary physical custody, Father partial custody, and the parties' shared legal custody.[3] Thereafter, in March

_____

[1] We have gleaned the following facts from the certified record, and the lengthy trial court opinions filed in this matter.

[2] The parties divorced in May of 2012. *See* Order, 5/17/2012.

[3] Lebanon County Court of Common Pleas Judge Bradford H. Charles has presided over this custody matter continuously since 2006. In his October 6, 2006, adjudication, Judge Charles described this case as "one of the most difficult custody cases [he] ever had to decide." Trial Court Adjudication, 10/6/2006, at 1. The court summarized the parties' primary complaints, at that time, as follows: (1) Father insisted Mother was a "prescription drug addict who is incapable – due to her addiction - of properly caring for the children" and worried his role in their lives would be greatly diminished if they were permitted to live with Mother in York County, and (2) Mother complained that Father was a "tyrannical and overbearing husband," who would "lash out verbally whenever things do not go his way." *Id.* at 3-4. The court stated: "While we do not doubt for a second the love both parties professed for their children, we must conclude that there is a fair amount of truth to what both sides argue." *Id.* at 4. Although the court ultimately granted Mother primary physical custody, it cautioned: "Mother should not
*(Footnote Continued Next Page)*

- 2 -

2009, and November 2011, Father filed two petitions for contempt, claiming Mother was interfering with his periods of partial custody. Both times, the trial court entered an order finding Mother in contempt. *See* Order, 5/29/2009; Order 11/22/2011.

Subsequently, three incidents in 2012 led Mother to seek a Protection from Abuse ("PFA") order against Father. The most serious incident occurred during a custody exchange in February of 2012. Father used physical force to compel their oldest son, Z.R.B., to enter Father's car. When Z.R.B. attempted to climb out, Father shoved him back in, whereupon Z.R.B. hit his head. *See* Trial Court Opinion, 5/15/2013, at 15. Father was subsequently charged with simple assault, and agreed to enter an accelerated rehabilitative disposition ("ARD") program.[4] *See id.* at 14. He did not see Z.R.B. for almost a year following that incident. *See id.*

*(Footnote Continued)* ─────────────

view this result as a 'victory', nor should Father view it as a 'defeat'. Custody orders are never final." *Id.* at 35.

[4] The trial court emphasized Father had agreed to the disposition in lieu of trial; thus, the 2013 custody hearing was the first time the facts were recounted in a courtroom. *See id.* at 14. Further, the court stated that had the same facts been presented in a criminal courtroom that were presented during the custody hearing, the court "would have found Father not guilty of any crime." *Id.* at 17. Indeed, the trial court laid much of the blame for the incident on Z.R.B., who "acted like a spoiled brat and would not listen to his parents[,]" and Mother, who "created a culture of mistrust" between the children and Father, and then "poured gasoline" on an already incendiary situation. *Id.* at 17-18.

In July of 2012, Mother filed a PFA against Father, alleging two incidents involving their other sons. She claimed Father (1) "slammed" C.M.B.'s head against a wall while the child was in the shower, and (2) grabbed C.J.B. during an argument "and jerked his head and neck back and forth yelling at him." *Id.* at 19. Although a PFA hearing was scheduled, the parties came to an agreement without an admission of culpability, which directed Father have no contact with his sons for a period of six months. *See id.* at 19-20.

On December 12, 2012, Father filed a petition for modification of custody. After conducting another custody trial, the Lebanon County trial court entered an order on May 15, 2013, once again granting Mother primary physical custody, and Father partial physical custody.[5] With respect to legal custody of the children, the court awarded it jointly to both parties, but stated: "If and only if the parties cannot reach an agreement after consultation regarding an important issue, Father shall be granted an ability to render a final and binding decision." Order, 5/15/2013, at 1-2. Mother filed an appeal of the custody order.

On March 13, 2014, a panel of this court affirmed in part, and reversed in part. While the panel affirmed the physical custody schedule, it concluded the court's legal custody tie-breaker provision was improper. *See J.J.B. v.*

---

[5] The court explained its decision in an 81-page opinion. *See* Trial Court Opinion, 5/15/2013.

- 4 -

***B.A.B.***, 100 A.3d 306 [988 MDA 2013] (Pa. Super. 2014) (unpublished memorandum at *7). Accordingly, the panel remanded the case, and directed the trial court to consider "whether, absent its imposition of the improper tie-breaking provision, Father should have sole legal custody since the trial court was essentially granting that status to him in its May 15, 2013 order." ***Id.***

Upon remand, the trial court conducted another hearing on June 9, 2014. Thereafter, on August 5, 2014, the court entered an order awarding primary **legal custody** to Father. ***See*** Order, 8/5/2014. Mother, once again, filed an appeal to this Court, which affirmed the trial court's decision in an unpublished memorandum. ***See J.J.B. v. B.A.B.***, 121 A.3d 1137 [1501 MDA 2014] (Pa. Super. 2015) (unpublished memorandum). While that appeal was pending, Father filed another petition for contempt on September 22, 2014, asserting Mother was interfering with his custody of the children. Following a hearing, the court again found Mother in contempt by order entered November 25, 2014.

Sometime during 2015, C.M.B. stopped attending school in York County, where he resided with Mother. Mother claimed it was due to a medical issue. Nevertheless, truancy charges were filed against Mother in York County. Although she was found guilty of the summary offenses on April 26, 2016, the charges were later withdrawn after she appealed.

Meanwhile, in April of 2016, Mother filed three petitions in York County to address the parties' ongoing custody dispute: (1) a petition to modify

custody; (2) a petition to transfer jurisdiction and venue; and (3) a petition for emergency relief. After an initial hearing, Mother withdrew her petition for emergency relief. The York County trial court conducted a hearing on June 14, 2016, concerning Mother's petition to transfer jurisdiction and venue, but later dismissed the petition, concluding Lebanon County must first relinquish venue.

While Mother was attempting to transfer the custody action to her home county, York County Children, Youth and Families Agency ("CYF") filed a dependency petition regarding C.M.B. Following four hearings between June and September of 2016, C.M.B. was adjudicated dependent on September 28, 2016, and placed in the Philhaven Residential Treatment Program, which is located in Lebanon County.

On June 27, 2016, in the Lebanon County Court of Common Pleas, Mother filed the instant petition, her second, seeking to transfer jurisdiction and venue. The trial court conducted a hearing on September 22, 2016. However, the court indicated it would not render a decision until after the aforementioned dependency hearing scheduled for September 28, 2016.[6]

_____

[6] During the September 22nd venue hearing, York County CYF caseworker, Rebecca Irvine, testified that her agency intended to request the York County court place C.M.B. with Father. *See* N.T., 9/22/2016, at 29. Therefore, the Lebanon County trial court informed the parties that it would delay its decision until after the dependency hearing. The court stated:

> If [the York County court] accepts the recommendation of York County [CYF], my intent would be to retain jurisdiction and

*(Footnote Continued Next Page)*

- 6 -

One week later, the Lebanon County trial court judge, who has continuously presided over this matter,[7] contacted York County Judge Gregory M. Snyder, who presided over C.M.B.'s dependency proceedings. The Lebanon County court relayed the content of the conversation as follows:

> Judge Snyder advised this Jurist that he declared C.[M.]B. to be dependent and he instructed the York County Children & Youth Services agency to find a long-term placement facility for C.[M.]B. Judge Snyder also advised this Jurist that he will be rotating out of dependency court shortly and that he would not preside over a custody trial if York were to be granted venue.

Trial Court Opinion, 10/5/2016, at 5. Thereafter, on October 5, 2016, the trial court entered an order denying Mother's petition to transfer jurisdiction and venue, and directing both parties to appear for a pre-trial conference on October 10, 2016. *See* Order, 10/5/2016. However, after consulting with counsel on October 10, 2016, the court entered another order, noting (1) C.M.B. had been "ordered into placement at the Philhaven residential facility located in Lebanon County[;]" (2) "[t]he parties agree that their two oldest

*(Footnote Continued)* ——————————

> venue and give you folks a three-day custody trial during the next available term of civil court which would mean you would not have to wait as long as you would normally wait for a trial.
>
> If [the York County court] does not change custody of [C.M.B.], I have a difficult decision to make because you're both right, in many of the things you argued[,] you're both right.
>
> So I'm going to put this aside until the 28[th]. …

*Id.* at 121-122.

[7] *See supra*, n. 3.

children should not be removed from the school district they are currently attending[;]" and (3) it was "not necessary" at that time to make any custody determinations, particularly until C.M.B. was released from his placement. Order, 10/10/2016. Accordingly, the court directed:

>     1.    To the extent necessary, both parties agree that any pending motion seeking to modify the existing court custody order should be deemed withdrawn.

>     2.    In the event that either party wishes to alter the existing custody order, a new custody modification petition will have to be filed. If such a petition is filed, it shall not be necessary for the parties to proceed with a conciliation or mediation. The matter should be listed immediately for a pretrial conference before the undersigned.

>     3.    If and when [C.M.B.] is to be released from placement, and if the parties require a decision regarding custody of [C.M.B.] at that time, a motion will have to be filed with this Court to raise the issue of where [C.M.B.] will live when he is released from placement.

Order, 10/10/2016. This timely appeal followed.[8, 9]

---

[8] Mother filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) simultaneously with her notice of appeal. Although the court had filed an opinion accompanying its October 5, 2016, Order, on November 28, 2016, the trial court filed an opinion pursuant to Pa.R.A.P. 1925(a) to address any still unresolved issues.

[9] We note that pursuant to Pennsylvania Rule of Appellate Procedure 311(b), an order sustaining venue is appealable as of right only if:

> (1) the plaintiff, petitioner, or other party benefiting from the order files of record within ten days after the entry of the order an election that the order shall be deemed final; or

> (2) the court states in the order that a substantial issue of venue or jurisdiction is presented.

*(Footnote Continued Next Page)*

In her first issue, Mother contends the trial court misapplied the law when it denied her petition to transfer venue to York County. She asserts that, pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), 23 Pa.C.S. §§ 5401-5482, York County has jurisdictional priority over Lebanon County because there is a dependency action pending in York County. *See* Mother's Brief at 8-9.

Section 5426 of the UCCJEA provides, in relevant part:

> **(a) General rule.--**Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court … may not exercise its jurisdiction under this subchapter if, at the time of the commencement of the proceeding, a proceeding

*(Footnote Continued)* ───────────────

Pa.R.A.P. 311(b). Here, neither of these requirements have been met. *See In re W.H.*, 25 A.3d 330, 334 (Pa. Super. 2011) (appellate court may question the appealability of an order *sua sponte* as it implicates the court's jurisdiction), *appeal denied*, 24 A.3d 364 (Pa. 2011).

Nevertheless, this Court has permitted an appeal from an order denying a petition to change venue when there are no additional pending claims before the trial court. *See Galgon v. Martnick*, 653 A.2d 44, 46 n.1 (Pa. Super. 1995) (finding order sustaining venue in child support case was appealable as final order when "all that remain[ed] before the trial court was the pending support order."). *See also J.K. v. W.L.K.*, 102 A.3d 511, 512 n.1 (Pa. Super. 2015) (considering appeal from order denying petition to change venue in custody matter; noting, "[t]here is no custody petition for modification petition pending").

Based upon the trial court's October 10, 2016, order, it is clear there are now no outstanding matters pending before the court. Indeed, the parties agreed "any petition seeking to modify the existing court custody order should be deemed withdrawn[,]" and the court would not reconsider its custody ruling until after C.M.B. was released from placement. Order, 10/10/2016. Therefore, this appeal is properly before us.

concerning the custody of the child has been commenced in a court of another [county] having jurisdiction substantially in conformity with this chapter unless the proceeding has been terminated or is stayed by the court of the other [county] because a court of this Commonwealth is a more convenient forum under section 5427 (relating to inconvenient forum).

23 Pa.C.S. § 5426.[10]   Mother maintains that because a dependency action was pending in York County at the time the petition to modify custody was filed in Lebanon County, York County was "first in time" and had "jurisdictional priority" over all custody matters concerning the parties' children.   Mother's Brief at 8.   She notes Section 5402 of the Domestic Relations Act defines a "child custody proceeding" as one "in which legal custody, physical custody or visitation with respect to a child is an issue[,]" including a "proceeding for … dependency."  23 Pa.C.S. § 5402.   Accordingly, because York County was exercising jurisdiction over the custody of the children *via* the dependency proceeding, Mother insists Lebanon County could not exercise simultaneous jurisdiction.

Short of declaring this issue waived, the trial court found that "Mother did not raise this argument at the time of the change of venue hearing on September 22, 2016, nor did Mother cite [Section] 5426 in any pleading[.]"

_____

[10] We note the language of the UCCJEA applies to **interstate** custody disputes.  ***See*** 23 Pa.C.S. §§ 5421-5430.  However, this Court has adapted and applied the provisions to determine **intrastate** disputes.  ***See J.K.***, ***supra***, 102 A.3d at 515-516.  Moreover, while the UCCJEA speaks of jurisdiction, it is axiomatic that "all counties within the Commonwealth maintain subject matter jurisdiction of custody disputes."  ***Id.*** at 514.  Here, we apply the provisions to determine venue.  ***See id.*** at 514-516 (applying the UCCJEA to determine the proper venue of custody dispute).

Trial Court Opinion, 11/28/2016, at 4. We agree. Indeed, at the conclusion of the venue hearing, the court specifically inquired of counsel: "Does everybody agree that the bottom line is that I have to look at the factors set forth in Section 5427 and make a decision based upon those factors? Are we agreeing that that's the paradigm of my analysis?" N.T., 9/22/2016, at 107. The attorneys for both Mother and Father replied, "Yes." **Id.** Therefore, we would find her reliance on Section 5426 is waived.[11]

Nevertheless, we conclude Section 5426 is inapplicable under the facts before us. Here, Mother sought to modify an existing Lebanon County custody order. Therefore, Lebanon County had jurisdictional priority over York County, despite the recent dependency proceeding. Indeed, as the trial court points out, when Mother filed the petition to transfer venue in York County, the York County court concluded "Lebanon County should determine whether or not to retain jurisdiction and venue." Trial Court Opinion, 11/28/2016, at 6. This ruling was proper under the UCCJEA. **See** 23 Pa.C.S. §§ 5422-5423.

---

[11] "Although an objection to subject matter jurisdiction may be raised at any time during a judicial proceeding, [q]uestions of personal jurisdiction, venue and notice which relate to the method by which a court having the power to adjudicate the matter first obtained superintendence of the cause of action ..., must be raised at the first reasonable opportunity or they are waived." **Goodman v. Goodman**, 556 A.2d 1379, 1390 (Pa. Super. 1989), *appeal denied*, 565 A.2d 1167 (Pa. 1989)

Section 5422 of the Act provides, in relevant part, that after a court makes an initial custody determination, it retains "exclusive, continuing jurisdiction over the determination" unless certain factors, not relevant here, are present.[12] 23 Pa.C.S. § 5422(a). Under Section 5423, however, a court with "exclusive, continuing jurisdiction" may determine "that a court of [another county] would be a more convenient forum under section 5427." 23 Pa.C.S. § 5423(1). The focus of both Mother's petition to transfer jurisdiction and venue, as well as the September 2016 hearing, was on the inconvenient forum factors listed in Section 5427(b). Therefore, we conclude the Lebanon County court applied the correct law – 23 Pa.C.S. § 5427 – when it considered whether York County was a more convenient venue for the parties' custody proceedings. Mother's first issue, accordingly, fails.

_____

[12] Pursuant to Section 5422, a court does not retain exclusive, continuing jurisdiction if: (1) the child and parents lack "a significant connection" with the court and "substantial evidence" concerning the child's "care, protection, training and personal relationships" is no longer available in the county, or (2) neither the child nor the parents reside in the county. 23 Pa.C.S. § 5422(a). Mother does not argue on appeal that either of these exceptions are applicable herein. Furthermore, this Court has held "a significant connection [exists] where one parent resides and exercises parenting time in the state and maintains a meaningful relationship with the child." **S.K.C. v. J.L.C.**, 94 A.3d 402, 412 (Pa. Super. 2014) (quotation omitted).

Next, Mother argues the evidence of record was insufficient to justify the trial court's denial of her petition to transfer venue. Specifically, she contends the argument and testimony at the venue hearing was limited, the court disregarded the fact that all of the recent proceedings have taken place in York County, the court did not weigh the Section 5427 factors proportionally, and, in fact, relied on several irrelevant factors in making its decision. **See** Mother's Brief at 10-15. Accordingly, she asserts the Lebanon County court's ruling was an abuse of discretion.

Our standard of review in this matter is as follows:

A court's decision to exercise or decline jurisdiction is subject to an abuse of discretion standard of review and will not be disturbed absent an abuse of that discretion. Under Pennsylvania law, an abuse of discretion occurs when the court has overridden or misapplied the law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings. An abuse of discretion requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures.

**J.K. v. W.L.K.**, 102 A.3d 511, 513 (Pa. Super. 2014), *quoting* **Lucas v. Lucas**, 882 A.2d 523, 527 (Pa. Super. 2005). Furthermore, as with all custody orders, "[w]e must accept findings of the trial court that are supported by competent evidence of record," and defer "issues of credibility and weight of the evidence … to the presiding trial judge who viewed and assessed the witnesses first-hand." **A.D. v. M.A.B.**, 989 A.2d 32, 35–36 (Pa. Super. 2010).

Mother seeks to transfer venue of the parties' custody matter to York County. Pursuant to Section 5427 of the UCCJEA, a court that has

- 13 -

jurisdiction of a child custody matter "may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another [county] is a more appropriate forum." 23 Pa.C.S. § 5427(a). The statute provides the following, non-exhaustive list of factors a trial court should consider in making this determination:

> (1) whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;
>
> (2) the length of time the child has resided outside this Commonwealth;
>
> (3) the distance between the court in this Commonwealth and the court in the state that would assume jurisdiction;
>
> (4) the relative financial circumstances of the parties;
>
> (5) any agreement of the parties as to which state should assume jurisdiction;
>
> (6) the nature and location of the evidence required to resolve the pending litigation, including testimony of the child;
>
> (7) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and
>
> (8) the familiarity of the court of each state with the facts and issues in the pending litigation.

23 Pa.C.S. § 5427(b)(1)-(8).

Here, the trial court painstakingly considered every argument presented by the parties, and each statutory factor listed in Section 5427,

before determining it would retain jurisdiction of this matter.[13]  **See** Trial Court Opinion, 10/5/2016, at 7-19.  We find the court's analysis thorough, and its application of the facts presented herein appropriate.  Therefore, we need not reiterate its findings in detail.  **See id.**

In summary, the court weighed factors (1) and (7) as neutral to the parties; factors (3), (4), and (6) in favor of Mother, but not heavily; factor (2) in favor of Mother; and factors (5) and (8) in favor of Father, with particular emphasis on factor (8), *i.e.*, the court's familiarity with the facts and issues.  With regard to factor (1), domestic abuse, the court found Mother's "proffered claims of abuse … to be exaggerated at best and fabricated at worst," and proposed Mother's goal was to "re-litigate her past claims of abuse before a new judge[.]"  **Id.** at 9.  The court found the distance to the courthouse and financial circumstances of the parties – factors (3) and (4) - favored Mother, although not to a great extent.  It noted the distance to the Lebanon County courthouse added only 30 minutes to Mother's travel time, and while Father's financial circumstances were better than Mother's, he was not "wealthy."[14]  **Id.** at 11.  Furthermore, with

_____

[13] Indeed, the court provided a comprehensive, two-page chart outlining each statutory element, and the parties' arguments concerning how each element applied to the facts of this case.  **See** Trial Court Opinion, 10/5/2016, at 7-8.

[14] The court explained Mother has not been "consistently employed since 2006" due to her struggle with substance abuse addiction and a "wide variety of medical problems."  **Id.** at 11.

regard to the location of the evidence, factor (6), the court found that, while "the majority of witnesses in this case will be from York County," there were "important witnesses" located in Lebanon County, and technological devices such as videoconferencing, teleconferencing and Skype could be employed to "mitigate" any inconvenience.[15] *Id.* at 14-15.

Mother's main points of contention appear to be with the weight the court gave to the remaining factors.[16] She emphasizes that the children have lived with her in York County for more than ten years. *See* Mother's Brief at 11. More importantly, all of the recent custody matters have been heard by the York County trial court. Mother explains:

> In the last ten months of time, York County has had no less than nine hearings to discuss the custody of the children, their medical conditions, and the impact of the custody on school and dependency. Because of the multiple cases being handled in York County and the common evidence and witnesses, there is a significant favor for the York County court system to be able to handle them all effectively and timely.

---

[15] In particular, the trial court rejected Mother's claim that "it is preferable for document-intensive witnesses such as doctors to be personally present so that counsel can go over records with the witness in the presence of the Court." *Id.* at 14. Indeed, the court stated: "[T]he reality of modern case presentation is that most doctors prefer to testify remotely or by deposition." *Id.*

[16] We note that although Mother complains the trial court imposed "a 7 minute limitation on argument … just prior to the start" of the hearing, she fails to explain how this limitation prejudiced her, save for her allegation that "the record was insufficient for [the court's] analysis." Mother's Brief at 10-11. However, as noted above, we conclude the testimony was sufficient to support the court's findings on the Section 5427 factors.

*Id.* at 12.

Mother further states: "although Lebanon County has a history with this case, it has not heard any matter on this case in two years until just recently, after Mother's petition to transfer, when Father filed a Petition for Contempt against Mother." *Id.* at 14. Accordingly, she maintains that, contrary to the Lebanon County court's finding, "the York County courts have become very familiar with this case." *Id.*

Lastly, Mother takes issue with the trial court's finding that she implicitly agreed to jurisdiction in Lebanon County. She states she "never agreed to jurisdiction" and points out that, during the venue hearing, "she specifically testified that she thought she had to remain there and was not aware that she could relieve her burden though a transfer." Mother's Brief at 13-14. Therefore, she argues the action should be transferred to York County.

Our review of the certified record, the transcript from the venue hearing, the parties' briefs, the trial court's opinion, and the relevant statutory and case law, leads us to conclude the trial court did not abuse its discretion when it retained jurisdiction of this custody action. Section 5427 does **not** mandate a trial court must weigh each factor **equally**. In the present case, the trial court took a common sense approach based on its extensive history with this matter and the parties.

While we agree the more recent truancy and dependency proceedings occurred in York County, those matters arose as a direct result of Mother's

actions, that is, her failure to ensure C.M.B. attended school. **See** N.T., 9/22/2016, at 30 (Irvine testifying that the dependency action pertained only to Mother because as the "primary physical custodian during the weekdays … it is her obligation to assure that her children attend school every day."). Lebanon County is where Father has consistently resided since before the parties' separation, where the children visit Father during his custodial periods, and where, recently, C.M.B. was placed after his dependency adjudication.

Moreover, although the dependency and truancy issues will be relevant in the custody matter, Mother downplays the fact that the Lebanon County trial court - and Judge Charles in particular - has conducted 14 hearings over the last 11 years to resolve the parties' custody disputes.[17] Indeed, the trial

_____

[17] The record reveals the following court hearings:

- Hearings on 8/29/2006 and 9/5/2006 to rule on Father's petition for emergency relief regarding Mother's prescription drug abuse;

- A custody hearing on 9/29/2006, and a review hearing on 8/13/2007;

- Hearings on 5/29/2006 and 11/22/2011, to resolve Father's petitions for contempt;

- Hearings on 3/14/2013, 3/15/2013, and 4/26/2013, to determine Father's petition for modification;

- A hearing on 6/9/2014, per this Court's remand following appeal;

*(Footnote Continued Next Page)*

court noted, "[f]or nine of the past ten years, the locus of this custody litigation has been in Lebanon County." Trial Court Opinion, 10/5/2016, at 16. The court further explained:

> The simple truth is that no jurist has as much background and knowledge about Mother and Father than does the undersigned. Moreover, it would simply not be possible for any jurist to gain the necessary insight without hours and hours of duplicative background testimony. We are unwilling to inflict this burden upon the York County Court of Common Pleas.

*Id.* at 17. We find no reason to disagree. *See S.K.C. v. J.L.C.*, 94 A.3d 402, 417 (Pa. Super. 2014) ("[I]t only requires common sense for a trial court to conclude that an issue will be resolved more expeditiously in a forum where proceedings have already commenced and where the trial court has held hearings on the child custody dispute than a forum where proceedings have not commenced and the trial court would have to learn the case anew."). This Court has stated: "Nothing is more detrimental to an effective resolution of custody matters than constant revisitation by different judges in different jurisdictions[.]" *K.W.B. v. E.A.B.*, 698 A.2d 609, 613 (Pa. Super. 1997).

_____
*(Footnote Continued)*

- Hearings on 11/17/2014 and 8/23/2016, to resolve Father's petitions for contempt; and

- A hearing on 9/22/2016, to determine Mother's petition to transfer jurisdiction and venue.

We note, too, that each of the **contempt** hearings, save for the last one on August 23, 2016, resulted in a finding that Mother was in contempt for failing to abide by the parties' custody order.

We also find no basis to disregard the trial court's finding that Mother **implicitly** agreed "that Lebanon County should decide issues pertaining to her children's custody[.]" *Id.* at 12. As noted repeatedly above, this particular trial judge has a long history with the parties. Although Mother claims she never petitioned to transfer the matter because "she was not aware" she could do so,[18] the trial court was free to disregard that testimony, and conclude, as it did, that "Mother's current Motion to Change Venue is not about convenience; it is a thinly veiled effort to obtain a new Judge who she hopes will be more willing to buy into the narrative she proposes." *Id.* at 13. Indeed, from 2006, when Mother first moved to York County, until April of 2016, when she filed a petition to transfer in York County, Mother never questioned the Lebanon County court's jurisdiction. The trial court emphasized Mother "was perfectly satisfied with litigating matters in Lebanon County so long as the decisions were in her favor." *Id.* at 12. However, the court explained the "dynamic" shifted in 2013, after the court issued the 81-page opinion, which "employed blunt and uncompromising language that was critical of Mother and what [the court] characterized as her 'campaign of estrangement' directed at Father." *Id.* Mother even sought the court's recusal following its award of primary legal custody to Father in August of 2014. Under these facts, we cannot say the

---

[18] Mother's Brief at 14.

- 20 -

court's determination that Mother implicitly agreed to its jurisdiction was an abuse of discretion.

Because we find the evidence presented was sufficient to justify the trial court's ruling to retain jurisdiction in this matter, and the court's findings did not exhibit an abuse of discretion, we conclude Mother's second issue warrants no relief.

In her penultimate claim,[19] Mother argues the trial court improperly considered her prior recusal request as a reason to deny her petition to transfer venue. She insists "the court's judgment was manifestly unreasonable to use this prior request against her." Mother's Brief at 17.

Again, we find no error or abuse of discretion on the part of the trial court. The court considered Mother's 2014 recusal request as evidence of her change in attitude toward the court after it granted Father primary legal custody, and criticized her "'campaign of estrangement' directed at Father." Trial Court Opinion, 10/5/2016, at 12. This was a proper consideration. Indeed, as discussed *supra*, one of the factors in determining whether a jurisdiction is an inconvenient forum for a custody dispute is whether the parties agreed as to which county should assume jurisdiction. **See** 23 Pa.C.S. § 5427(b)(5). Here, the court considered the fact that Mother had implicitly agreed Lebanon County was a convenient forum, until it entered a

_____

[19] We have reordered the final two issues for ease of disposition.

ruling that was not in her favor. *See* Order, 8/5/2014 (granting primary legal custody to Father). Therefore, Mother's subsequent recusal request, and her later attempts to transfer jurisdiction and venue to York County, provided evidentiary support for the trial court's finding that Mother was engaged in "blatant 'forum-shopping.'"[20] Trial Court Opinion, 10/5/2016, at 13. Consequently, this issue is meritless.

Lastly, Mother contends the trial court improperly permitted Father's witness, CYS caseworker Rebecca Irvine, to testify telephonically. She asserts the ruling was prejudicial because Father's last-minute request left her "no time … to prepare for electronic testimony," and the court denied her "the opportunity to properly cross examine the witness." Mother's Brief at 15.

When considering an evidentiary ruling, our standard of review is well-established:

> The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law.

---

[20] The fact Mother denied she was engaging in "forum-shopping," and claimed she succumbed to the inconvenience of travelling to Lebanon County because she did not realize she could seek a transfer of venue, "was a credibility determination, best made by the trial court which witnessed Mother testify." *S.K.C.*, *supra*, 94 A.3d at 414–415.

***K.T. v. L.S.***, 118 A.3d 1136, 1165 (Pa. Super. 2015) (quotation omitted).

Pennsylvania Rule of Civil Procedure 1930.3 permits telephonic testimony during a domestic relations matter "[w]ith the approval of the court upon good cause shown." Pa.R.C.P. 1930.3. Here, on the day of the hearing, Father filed a motion to allow the telephone testimony of Irvine. He averred that (1) he had subpoenaed Irvine; (2) CYF requested she be permitted to testify by telephone because of its policy "that a caseworker cannot attend a hearing without an agency attorney present[;]" and (3) Mother would not agree to permit Irvine to testify telephonically. Motion to Allow Telephone Testimony, 9/22/2016, at 1-2. Mother objected to Father's request.[21] Nevertheless, at the beginning of the venue hearing, the trial court granted Father's request. ***See*** N.T., 9/22/2016, at 3, 25.

The court addressed Mother's claim on appeal in its opinion as follows:

> This Court determined there was good cause to allow testimony by electronic means due to the nature of the caseworker's job demands. Nothing about the caseworker's testimony would have been different had she been physically present in court to testify. During the hearing, Mother's counsel had the opportunity to both impeach and cross-examine testimony. Furthermore, never before had any of Mother's attorneys objected to the usage of electronic testimony throughout this Court's belabored history with this case. In fact, Mother has presented numerous witnesses over the years via teleconference, and neither Father nor this Court has objected to the presentation of testimony via

---

[21] Mother includes in her Reproduced Record a copy of a reply she purportedly filed in the trial court. However, that copy is not time-stamped, and no reply is included in the certified record.

this medium. Only now as Mother petitioned to switch court venue does she take issue with testimony by electronic means.

There is nothing novel about our decision to permit testimony via teleconference. As Rule 1930.3 recognizes, technology exists to facilitate presentation of evidence without the need for a witness to personally appeal in court. … The use of teleconferencing in this case did not deprive Mother of her opportunity for a fair proceeding. Counsel was able to cross-examine the witness fully.

Trial Court Opinion, 11/28/2016, at 7-8 (footnote omitted).

We detect no abuse of discretion on the part of the trial court. Father provided good cause for his request, and the court granted the motion, as it had done in the past for Mother. ***See id.*** Mother's focus appears to be on her claim that the court limited her cross-examination of the witness. ***See*** N.T., 9/22/2016, at 37-39 (trial court did not permit Mother's counsel to retrieve documents purportedly contradicting caseworker's testimony that Mother was uncooperative).[22] That claim has nothing to do with the court's ruling permitting the witness to testify telephonically. Accordingly, no relief is due.

Order affirmed.

---

[22] To the extent Mother challenges this limitation, we detect no error or abuse of discretion. Indeed, Mother's cooperation, or lack thereof, with York County CYF, had no bearing on whether York County was a more convenient venue for the parties' custody issues.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/26/2017</u>