J-A17015-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| C.C.W. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| M.R. | : | |
| | : | |
| Appellant | : | No. 321 WDA 2018 |
| | : | |
| V.R. AND M.R., INTERVENERS | : | |

Appeal from the Order February 9, 2018
In the Court of Common Pleas of Greene County
Civil Division at No(s):  A.D. No. 531 of 2014

BEFORE:  OTT, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                    **FILED AUGUST 27, 2018**

M.R. ("Father") appeals from the order entered on February 9, 2018, in the Court of Common Pleas of Greene County, that relinquished jurisdiction of the child custody litigation to the Circuit Court of Ohio County, West Virginia. Upon review, we affirm.

Father and C.C.W. ("Mother"), who never married, lived with their three daughters[1] in Ohio County, West Virginia, until 2013, when Mother relocated with Children to Greene County, Pennsylvania.  Trial Court Opinion, 3/26/18,

_____

[1] The children are A.M.R., born in November 2003; M.R., born in July 2008; and S.R., born in August 2009 (collectively, "Children").

at 1-2. Mother initiated a child custody action in the Greene County Court of Common Pleas ("trial court") in July 2014, wherein she requested primary physical custody.[2]  *Id.* at 2.  However, in October 2014, the trial court granted Father, who continued to reside in Ohio County, West Virginia, primary physical custody of Children, and Mother partial physical custody three weekends per month during the school year and shared physical custody on alternating weeks during the summer.  *Id.*  Thereafter, in 2015, Mother moved to Washington County, Pennsylvania, where she remained up through and including the time of the subject proceedings.  *See* Father's brief at 34; Mother's brief at 3.  On October 13, 2016, the trial court limited Mother's

---

[2] The trial court had jurisdiction to make an initial custody determination pursuant to Section 5421(a)(1) of the UCCJEA, which provides in relevant part:

**§ 5421. Initial child custody jurisdiction.**

**(a)**  *General rule.*  — Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth has jurisdiction to make an initial child custody determination only if:

**(1)** this Commonwealth is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this Commonwealth but a parent or person acting as a parent continues to live in this Commonwealth;

23 Pa.C.S. § 5421(a).

custody to "supervised visitation" every Saturday from 12:00 p.m. to 3:00 p.m.[3],[4]  Trial Court Opinion, 3/26/18, at 2.

Mother filed exceptions to the trial court's custody order, but the court continued the hearing on her exceptions because a court in West Virginia had adjudicated Children dependent.  **See** Order, 12/6/17.  Children were placed in the protective custody of the West Virginia Department of Health and Human Services ("Agency") on May 22, 2017, due to allegations that Father abused drugs.  Trial Court Opinion, 3/26/18, at 2.  The Agency's investigation into the allegations was ongoing at the time of the subject proceedings, and Children remained in foster care in West Virginia.  **Id.**

---

[3] Pursuant to Section 5323 of the Child Custody Act, 23 Pa.C.S. §§ 5321-5340, "supervised visitation" is not included in the types of custody a court may award.  Rather, the Act provides for "supervised physical custody," which it defines as "Custodial time during which an agency or an adult designated by the court or agreed upon by the parties monitors the interaction between the child and the individual with those rights." 23 Pa.C.S. § 5322(a).  We construe the October 13, 2016 order as having awarded Mother "supervised physical custody."

[4] Children's paternal grandparents, who have resided in Ohio County, West Virginia, during all times relevant to the underlying matter, filed a petition to intervene in the underlying custody action in or around August 2016, which the trial court granted.  **See** Trial Court Opinion, 3/26/18, at 2.  The October 13, 2016 custody order also awarded the grandparents partial physical custody as needed.  **Id.**  We observe that the grandparents did not file a notice of appeal from the subject order, and they did not file a brief in this appeal.

On February 2, 2018, Mother filed in the trial court a "petition to confirm Pennsylvania custody jurisdiction and for primary custody." Mother requested that the trial court issue an order confirming Pennsylvania custody jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), 23 Pa.C.S. §§ 5401-5482, "for ongoing child custody litigation in Pennsylvania which litigation was interrupted by emergency and temporary jurisdiction assumed by the [Agency] filing . . . an abuse and neglect petition in West Virginia against the parties[,] and the [Agency] taking custody of the Children and placing them in foster care in May, 2017[.]" Petition, 2/2/18, at ¶ 64(i).

Mother alleged that, although named as a co-defendant in the dependency action filed in the Circuit Court of Ohio County, West Virginia ("Circuit Court"), following a proceeding on December 28, 2017, the Circuit Court found she did not abuse or neglect Children. *Id.* at ¶ 55-56. Mother further alleged that she filed an action for custody in the Circuit Court, but that the Circuit Court "deferred" ruling on it. *Id.* at ¶ 59. Mother averred that the Circuit Court's deferral of her custody request was based on the October 13, 2016 order in effect in the trial court, which limited her to supervised physical custody. *Id.* Therefore, Mother requested that the trial court issue an emergency, *interim* order granting her primary physical and sole legal

- 4 -

custody of Children, "pending and subject to the outcome of the [dependency] proceeding against [F]ather in West Virginia[.]" ***Id.*** at ¶ 64(ii).

On February 7, 2018, Father filed an answer to Mother's petition. Father neither admitted nor denied Mother's request for the trial court to "confirm custody jurisdiction" under the UCCJEA.

On February 7, 2018, the trial court held oral argument on the issue of jurisdiction. Trial Court Opinion, 3/26/18, at 3. Counsel for the parties agreed that the Circuit Court assumed temporary emergency jurisdiction under its version of Section 5424 of the UCCJEA by placing Children in foster care.[5]

_____

[5] Section 5424 provides as follows.

> ***(a) General rule.*** — A court of this Commonwealth has temporary emergency jurisdiction if the child is present in this Commonwealth and the child has been abandoned or it is necessary in an emergency to protect the child because the child or a sibling or parent of the child is subjected to or threatened with mistreatment or abuse.
>
> . . .
>
> ***(c) Previous custody determination or proceeding.*** — If there is a previous child custody determination that is entitled to be enforced under this chapter or a child custody proceeding has been commenced in a court of a state having jurisdiction under sections 5421 through 5423, any order issued by a court of this Commonwealth under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under sections 5421 through 5423. The order issued in this Commonwealth remains in effect until an order is obtained

However, Mother's counsel argued that the "emergency" nature of the jurisdiction no longer existed because the Circuit Court found that she did not abuse or neglect Children. N.T., 2/7/18, at 66. Mother's counsel asserted that the Circuit Court nonetheless refused to place Children in her physical custody because of the trial court's October 13, 2016 order granting her supervised physical custody. *Id.* at 69. Mother's counsel requested that the trial court determine jurisdiction together with the Circuit Court, and the trial court agreed that it needed to communicate with the Circuit Court. *Id.* at 22, 55.

---

from the other state within the period specified or the period expires.

**(d)** *Mandatory communication between courts.* — A court of this Commonwealth which has been asked to make a child custody determination under this section, upon being informed that a child custody proceeding has been commenced in or a child custody determination has been made by a court of a state having jurisdiction under sections 5421 through 5423, shall immediately communicate with the other court. A court of this Commonwealth which is exercising jurisdiction pursuant to sections 5421 through 5423, upon being informed that a child custody proceeding has been commenced in or a child custody determination has been made by a court of another state under a statute similar to this section, shall immediately communicate with the court of that state to resolve the emergency, protect the safety of the parties and the child and determine a period for the duration of the temporary order.

23 Pa.C.S. § 5424.

Father's counsel argued that the trial court should retain jurisdiction and rule on Mother's custody request after the dependency litigation in West Virginia is resolved. *Id.* at 32-33, 56. Father's counsel expressed his concern that Mother's counsel "wants to subvert all the evidence over three years that has been put on the record" by seeking an *interim* custody order in the trial court. *Id.* at 56.

Thereafter, by order dated and entered on February 9, 2018, the trial court relinquished jurisdiction as follows:

> Upon discussion with Judge James P. Mazzone of the Circuit Court of Ohio County, West Virginia Court and in consideration of the record and in the best interests of the children, we GRANT Judge Mazzone's request to transfer the custody of the children to Ohio County, West Virginia.

Order, 2/9/18.

On February 16, 2018, Father filed a motion for reconsideration, which he amended on February 21, 2018. The trial court denied the motion. On February 28, 2018, Father filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[6]

---

[6] Mother states in her appellee brief that, "[s]ince the matter was transferred to [the Circuit Court], Mother has gained temporary primary custody of the children through the [Circuit Court], [which] is presiding over the [dependency matter]." Mother's brief at 9. Mother states that Children are residing with her in Washington County, Pennsylvania, after ten months in foster care in West Virginia. *Id.* Thus, because Mother presumably is not an aggrieved

Father presents the following issues for our review:

A.    Did the trial court violate the notice provisions of the [UCCJEA] and deny [Father] due process by not initially contacting the foreign court and th[e]n failing to provide notice to the parties that the court was or had contacted the judge of the foreign jurisdiction[?]

B.    Did the trial court violate the UCCJEA provisions by not allowing the parties to participate in, provide access to, or even make a record of the communication made between the courts before it transferred jurisdiction?

C.    Did the [trial] court violate the UCCJEA by not giving the parties the opportunity to present facts or evidence, or hold a hearing on jurisdiction before a determination was made transferring the case to a foreign jurisdiction?

D.    Did the trial court apply the correct standard, a "best interest of the child standard," without citing reasons why or considering any other factors enumerated in the UCCJEA when deciding to change jurisdiction of the custody case?

Father's brief at 13-14.

Before turning to the merits of Father's claims, we address Mother's request that this appeal be quashed as moot because the trial court "lacks the authority to enter or otherwise amend a custody order."[7]  Mother's brief at 10.  Specifically, Mother asserts in her brief that Children are in her physical

---

party of the subject order, she did not file an appeal despite her petition for the trial court to confirm jurisdiction and issue an *interim* custody order.

[7] Our Rules of Appellate Procedure provide that "any party may move . . . [t]o dismiss for mootness."  Pa.R.A.P. 1972(a)(4).  Therefore, we construe Mother's request as a motion to dismiss.

- 8 -

custody in Washington County, Pennsylvania, pursuant to an *interim* order issued by the Circuit Court on an unspecified date after the trial court issued the order relinquishing its jurisdiction. **See** n. 6, *supra*. Therefore, Mother asserts that venue would lie in Washington County, not Greene County, if this matter would return to Pennsylvania. For this reason, Mother argues that, if this Court agrees with Father that the trial court improperly relinquished jurisdiction, the trial court cannot enter a custody order that would have any legal force or effect; thus, Father's appeal should be dismissed as moot. **See** Mother's brief at 9-10; **see also In re J.A.**, 107 A.3d 799, 811 (Pa. Super. 2015) ("An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.").

Our Supreme Court has explained the distinction between subject matter jurisdiction and venue, as follows:

> Subject matter jurisdiction refers to the competency of a given court to determine controversies of a particular class or kind to which the case presented for its consideration belongs. Venue is the place in which a particular action is to be brought and determined, and is a matter for the convenience of the litigants. Jurisdiction denotes the power of the court whereas venue considers the practicalities to determine the appropriate forum.

**In re R.L.L.'s Estate**, 409 A.2d 321, 322 n. 3 (Pa. 1979) (internal citations omitted). Based on these distinctions, "[v]enue assumes the existence of jurisdiction." **See Commonwealth v. Bethea**, 828 A.2d 1066, 1074 (Pa. 2003). The Court explained, "the terms are often used interchangeably

because they must exist simultaneously in order for a court to properly exercise its power to resolve the particular controversy." ***Id.*** at 1075. However, the Court stated, "Jurisdiction of subject matter can never attach nor be acquired by consent or waiver of the parties, while venue may always be waived." ***Id.*** at 1073 n. 3 (citations omitted).

In ***J.K. v. W.L.K.***, 102 A.3d 511 (Pa. Super. 2014), this Court explained,

> While the UCCJEA is applicable to interstate proceedings, our Legislature has determined that its provisions "allocating jurisdiction and functions between and among courts of different states shall also allocate jurisdiction and functions between and among the courts of common pleas of this Commonwealth." 23 Pa.C.S.A. § 5471.
>
> In order to effectuate this legislative mandate, our supreme court has promulgated specific rules for applying the provisions of the UCCJEA to intrastate custody disputes. The rules recognize that all counties within the Commonwealth maintain subject matter jurisdiction of custody disputes. However, Pennsylvania Rule of Civil Procedure 1915.2 governing venue of custody matters defines how and what county may properly exercise that jurisdiction.[8]

_____

[8] The Rule provides, in relevant part:

**Rule 1915.2. Venue**

(a)    An action may be brought in any county

(1)(i) which is the home county of the child at the time of commencement of the proceeding, or

(ii) which had been the child's home county within six months before commencement of the proceeding and the child is absent

- 10 -

***Id.*** at 513-514 (emphasis added). Rule 1915.2(a)(1) and (2) "substantially mirror the requirements of Section 5421." ***Id.*** at 515 (footnote omitted).

Here, there is no evidence in the certified record that Children reside in Washington County. Indeed, the *interim* order that Mother alleges the Circuit Court issued is not included in the certified record. Therefore, we cannot consider Mother's argument. ***See Commonwealth v. Preston***, 904 A.2d 1, 6 (Pa. Super. 2006) (*en banc*) (emphasis in original) (citations omitted) (stating that, "matters which are not of record cannot be considered on appeal. . . . In this regard, our law is the same in both the civil and criminal context because, under the Pennsylvania Rules of Appellate Procedure, any document which is not part of the **officially certified record** is deemed non-

_____

from the county but a parent or person acting as parent continues to live in the county; or

(2) when the court of another county does not have venue under subdivision (1), and the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with the county other than mere physical presence and there is available within the county substantial evidence concerning the child's protection, training and personal relationships; or

. . .

Pa.R.C.P. 1915.2(a)(1), (2).

existent - a deficiency which cannot be remedied merely by including copies of the missing documents in a brief or in the reproduced record."). Even if we could consider Mother's argument, we observe that it is purely speculative, and it would fail for this reason. Accordingly, we deny Mother's motion to dismiss.

Next, we address Mother's argument in her brief that Father's issues on appeal fail because the trial court did not have exclusive, continuing jurisdiction pursuant to Section 5422 of the UCCJEA at the time of the subject proceedings.[9] Specifically, Mother claims that Washington County, where she

---

[9] Section 5422 provides, in relevant part:

**§ 5422. Exclusive, continuing jurisdiction.**

**(a)** *General rule.* — Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth which has made a child custody determination consistent with section 5421 (relating to initial child custody jurisdiction) or 5423 (relating to jurisdiction to modify determination) has exclusive, continuing jurisdiction over the determination until:

**(1)** a court of this Commonwealth determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this Commonwealth and that substantial evidence is no longer available in this Commonwealth concerning the child's care, protection, training and personal relationships; or

has resided since 2015, had jurisdiction and not Greene County. We explained in *B.A.B. v. J.J.B.*, 166 A.3d 395 (Pa. Super. 2017), that, although the UCCJEA speaks of jurisdiction, it is "axiomatic that 'all counties within the Commonwealth maintain subject matter jurisdiction of custody disputes.'" *Id.* at 401 n. 10 (citing *J.K.*, *supra* at 514). Thus, Mother's contention is one of venue, not subject matter jurisdiction.

It is well-settled that, "[a]lthough subject matter jurisdiction may be raised at any time during a judicial proceeding, [q]uestions of personal jurisdiction, venue and notice which relate to the method by which a court having the power to adjudicate the matter first obtained superintendence of the cause of action . . ., must be raised at the first reasonable opportunity or they are waived." *B.A.B.*, *supra* at 402 n. 11 (citing *Goodman v. Goodman*, 556 A.2d 1379 1390 (Pa. Super. 1989)). Here, Mother did not raise any question concerning venue in the trial court. Instead, she requested that the trial court confirm jurisdiction and issue an *interim* order granting her physical custody. Therefore, Mother's argument is waived. Even if not waived, we would reject her argument because the only conclusion possible on this record

---

**(2)** a court of this Commonwealth or a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in this Commonwealth.

23 Pa.C.S. § 5422(a).

is that Mother consented to the trial court's venue at the time of the subject proceedings. ***See also Commonwealth v. Bethea***, ***supra*** at 1073 n. 3 (citations omitted) ("Jurisdiction of subject matter can never attach nor be acquired by consent or waiver of the parties, while venue may always be waived.").

Next, we review *sua sponte* whether the trial court possessed subject matter jurisdiction under Section 5422 when Mother filed the subject petition in February 2018. ***See Grimm v. Grimm***, 149 A.3d 77, 84 (Pa. Super. 2016) (stating that this Court "may *sua sponte* raise the issue as subject matter jurisdiction cannot be waived."). Our standard of review is *de novo*, and our scope of review is plenary. ***See S.K.C. v. J.L.C.***, 94 A.3d 402, 408 (Pa. Super. 2014) (holding "that a trial court's decision that it possesses subject matter jurisdiction under section 5422 is purely a question of law. As such, our standard of review is *de novo* and our scope of review is plenary.").

This Court has explained that, pursuant to Section 5422(a)(1), "Pennsylvania will retain jurisdiction as long as a significant connection with Pennsylvania exists **or** substantial evidence is present." ***S.K.C.***, ***supra*** at 411 (emphasis added) (citing ***Rennie v. Rosenthol***, 995 A.2d 1217, 1220-1221 (Pa. Super. 2010)). With respect to "a significant connection," we have held that one exists "where one parent resides and exercises his parenting time in

- 14 -

the state and maintains a meaningful relationship with the child." **S.K.C.**, **supra** at 412 (quotation omitted).

In February 2018, Children's custody was controlled by the October 2016 order limiting Mother to supervised physical custody for three hours per week. The parties do not assert, and the record does not indicate, that Mother exercised her supervised physical custody in Pennsylvania. Further, approximately seven months after the trial court issued the order, Children were placed in foster care in West Virginia. Therefore, Mother was not exercising any parenting time in Pennsylvania in February 2018. As such, we cannot conclude that Children had a "significant connection" with Pennsylvania at the time Mother filed the subject petition.

However, we conclude that "substantial evidence" was present in Pennsylvania concerning Children's "care, protection, training and personal relationships." Since the commencement of the custody action in 2014, the locus of the custody litigation had been in the Greene County trial court. The parties assert in their briefs, and the record confirms, that the custody action resulted in protracted litigation for three years. The trial court issued the controlling custody order in October 2016, which Mother alleged precluded the Circuit Court from granting her temporary physical custody after discharging her from the dependency action but continuing it with respect to Father. In fact, Father argued against Mother's request for temporary physical custody

alleging that she "wants to subvert all the evidence over three years that has been put on the record" in the trial court, evidence which resulted in the most recent order limiting her to supervised physical custody. N.T., 2/8/18, at 56. Accordingly, we conclude that "substantial evidence" was present in Pennsylvania; thus, the Greene County trial court possessed exclusive, continuing jurisdiction over the child custody matter pursuant to Section 5422 when Mother filed the subject petition.

Turning to the merits of Father's issues on appeal, we review them according to an abuse of discretion standard. *See S.K.C.*, *supra* at 406 ("when a trial court possesses subject matter jurisdiction over a child custody dispute, a trial court's decision to exercise that jurisdiction is subject to an abuse of discretion standard of review."). As we have explained, "an abuse of discretion occurs when the court has overridden or misapplied the law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings." *B.A.B.*, *supra* at 403 (citation omitted).

Father's issues overlap, and so we review them together. The crux of his contentions is that the trial court did not comply with the UCCJEA and thereby denied the fundamental due process rights afforded to him by the United States Constitution. It is well-settled that "[p]rocedural due process requires, at its core, adequate notice, opportunity to be heard, and the chance

to defend oneself before a fair and impartial tribunal having jurisdiction over the case." ***Garr v. Peters***, 773 A.2d 183, 191 (Pa. Super. 2001) (internal quotation marks and citations omitted). "Due process is flexible and calls for such procedural protections as the situation demands." ***In re Adoption of Dale A., II***, 683 A.2d 297, 300 (Pa. Super. 1996) (citing ***Mathews v. Eldridge***, 424 U.S. 319, 334, (1976)).

Specifically, Father contends that the trial court (1) failed to immediately contact the Circuit Court upon learning that it assumed emergency temporary jurisdiction; (2) failed to provide notice to the parties that it would contact or did contact the Circuit Court; (3) failed to allow the parties to participate in the communication between the trial court and the Circuit Court; (4) failed to make a record of the communication between both courts; (5) failed to provide the parties with an opportunity to present facts or evidence before making its decision to relinquish jurisdiction; and (6) improperly applied the "best interest of the child" standard in deciding to relinquish jurisdiction. As such, Father requests that the subject order be reversed and the case remanded for proper compliance with the UCCJEA before relinquishing jurisdiction to the Circuit Court.

Father first asserts that the trial court failed to immediately contact the Circuit Court upon learning that it assumed emergency temporary jurisdiction pursuant to Section 5424(d), *supra*, which provides, in relevant part,

A court of this Commonwealth which is exercising jurisdiction pursuant to sections 5421 through 5423, upon being informed that a child custody proceeding has been commenced in or a child custody determination has been made by a court of another state under a statute similar to this section, shall immediately communicate with the court of that state to resolve the emergency, protect the safety of the parties and the child and determine a period for the duration of the temporary order.

23 Pa.C.S. § 5424(d).

There is no dispute that the trial court failed to immediately contact the Circuit Court upon learning of Children's dependency. Rather, the trial court continued or stayed Mother's custody litigation upon learning of Children's dependency in West Virginia. When Mother filed her petition for the trial court to confirm jurisdiction and issue an *interim* custody order in February 2018, Children had been in foster care in West Virginia for nine months.

Father, however, simply concludes that the trial court violated Section 5424(d), *supra*, and, in doing so, denied his due process rights. Father does not assert that he suffered any actual harm as a result of the trial court's violation. Indeed, the trial court's failure in this regard did not contribute to its decision to relinquish jurisdiction, and did not prevent Father from filing this appeal. *See J.C. v. K.C.*, 179 A.3d 1124, 1130 (Pa. Super. 2018) (citing *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1122 (Pa. 2000) ("[relief] is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate . . . that he or she has suffered prejudice from the mistake")).

Father's second through fifth assertions relate to whether the trial court failed to comply with Section 5410, which provides:

**§ 5410. Communication between courts.**

*(a) General rule. —* A court of this Commonwealth may communicate with a court in another state concerning a proceeding arising under this chapter.

**(b) *Participation of parties. —*** The court may allow the parties to participate in the communication.  If the parties are not able to participate in the communication, they must be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made.

**(c)   *Matters   of   cooperation   between   courts.* —** Communication between courts on schedules, calendars, court records and similar matters may occur without informing the parties.  A record need not be made of the communication.

**(d) *Record. —*** Except as otherwise provided in subsection (c), a record must be made of a communication under this section.  The parties must be informed promptly of the communication and granted access to the record.

**(e) *Definition. —*** As used in this section, the term "record" means information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form.

23 Pa.C.S. § 5410.

With respect to Section 5410(d), Father accurately asserts that the trial court did not inform the parties before communicating with the Circuit Court, did not create a record of the communication, and did not inform the parties of the communication before it transferred jurisdiction.  However, Father again

fails to assert that he suffered harm as a result of these failures, and his complaints do not establish that he did.

In its Rule 1925(a) opinion, the trial court stated:

On February 9, 2018, after a telephone communication with the Honorable Judge James P. Mazzone of Ohio County, West Virginia, in consideration of the record and in the best interest of the Children, the [trial] [c]ourt granted the Honorable Judge's request and transferred custody to Ohio County, West Virginia. . . .

Trial Court Opinion, 3/26/18, at 3. The trial court reasoned, "Here, there is an ongoing investigation by the [Agency] and the [C]hildren are currently in foster care in West Virginia. Prior to the [Agency] taking custody, the Children lived with their Father and Grandparents, all West Virginia residents, for several years. Finally, the Mother, [a] Washington County[,] [Pennsylvania] resident, has filed a motion in [the Circuit Court] for custody. . . ." *Id.* at 4.

The trial court did not state that it relinquished jurisdiction because of its communication with the Circuit Court. Rather, the trial court stated that it relinquished jurisdiction because of the ongoing dependency matter in the Circuit Court; Father's residency in Ohio County, West Virginia, with whom Children resided prior to their dependency; and because Mother filed a custody action in the Circuit Court. *See id.* Indeed, our review of the oral argument proceedings, which occurred before the trial court's communication with the Circuit Court, indicates that it favored relinquishing jurisdiction based on the record evidence. N.T., 2/7/18, at 57, 67-68. As such, we conclude that the

trial court's failures regarding Section 5410(d) did not contribute to its decision to relinquish jurisdiction, and it did not prevent Father from filing an appeal from the subject order. *See J.C.*, *supra*.

With respect to Section 5410(b), Father asserts that the trial court failed to provide the parties with an opportunity to present facts and legal arguments before relinquishing jurisdiction. We disagree. The trial court held oral argument on February 7, 2018, regarding Mother's petition to confirm jurisdiction. The above-stated facts relied upon by the trial court in relinquishing jurisdiction were presented by counsel during the oral argument. The trial court further explained in its Rule 1925(a) opinion, which the notes of testimony support:

> On February 7, 2018, the [c]ourt allowed the parties to extensively argue the issue of jurisdiction for over an hour. At the end of the argument, the [c]ourt indicate[d] that it was ready to make a decision and inquired of the [p]arties whether the court should hold any additional hearings. Despite the inquiry, neither [p]arty requested any additional hearings.

Trial Court Opinion, 3/26/18, at 4; *see also* N.T., 2/7/18, at 63-70. As such, we conclude that the trial court did not deny Father an opportunity to be heard before deciding to relinquish jurisdiction.

Finally, Father asserts that the trial court improperly based its decision to relinquish jurisdiction on the "best interest of the child" standard[10] rather than on the factors set forth in Section 5427, which provides, in relevant part:

**§ 5427. Inconvenient forum.**

**(a)** ***General rule.*** **—** A court of this Commonwealth which has jurisdiction under this chapter to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised upon motion of a party, the court's own motion or request of another court.

**(b)** ***Factors.*** **—** Before determining whether it is an inconvenient forum, a court of this Commonwealth shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:

**(1)** whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

**(2)** the length of time the child has resided outside this Commonwealth;

**(3)** the distance between the court in this Commonwealth and the court in the state that would assume jurisdiction;

**(4)** the relative financial circumstances of the parties;

---

[10] The best-interests standard is relevant in all child custody decisions in the trial courts and considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well[-]being. ***Saintz v. Rinker***, 902 A.2d 509, 512 (Pa. Super. 2006), *citing* ***Arnold v. Arnold***, 847 A.2d 674, 677 (Pa. Super. 2004).

**(5)** any agreement of the parties as to which state should assume jurisdiction;

**(6)** the nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

**(7)** the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

**(8)** the familiarity of the court of each state with the facts and issues in the pending litigation.

**(c)** *Stay.* — If a court of this Commonwealth determines that it is an inconvenient forum and that a court of another state is a more appropriate forum, it shall stay the proceedings upon condition that a child custody proceeding be promptly commenced in another designated state and may impose any other condition the court considers just and proper.

. . .

23 Pa.C.S. § 5427.

Father is correct that the "best interests of the child" standard applicable in child custody matters is not a factor to be considered under Section 5427(b). The trial court stated in the subject order and in its Rule 1925(a) opinion that it considered "the record and the best interest of the children" in relinquishing jurisdiction to the Circuit Court. The trial court provided the facts it found determinative in its Rule 1925(a) opinion, which we again recite:

Here, there is an ongoing investigation by the [Agency] and the [C]hildren are currently in foster care in West Virginia. Prior to the [Agency] taking custody, the Children lived with Father and Grandparents, all West Virginia residents, for several years.

> Finally, Mother, [a] Washington County[,] [Pennsylvania] resident, has filed a motion in [the Circuit Court] for custody. . . .

Trial Court Opinion, 3/26/18, at 4. We conclude that these determinative facts show that the trial court considered appropriate factors pursuant to Section 5427(b). As such, Father is not entitled to relief. Accordingly, we affirm the February 9, 2018 order relinquishing jurisdiction to the Circuit Court in Ohio County, West Virginia.

Order affirmed. Motion to dismiss denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/27/2018